THE PEOPLE ex rel. THE BOARD OF COUNTY COMMISSIONERS OF FREMONT COUNTY *v.* THE AUDITOR OF COLORADO TERRITORY, JAMES B. THOMPSON.

AUDITOR — *mandamus will not lie against, to enforce allowance of claim.* The power conferred upon the auditor to audit and allow claims against the territory (R. S. 78) is of a judicial nature, and mandamus will not lie to compel the auditor to *allow* a claim.

*But if the auditor refuse to act* upon a claim properly presented to him, the court will compel him to do so.

*Where no appropriation has been made.* If no appropriation has been made by law for the payment of a claim, the auditor cannot be required to draw a warrant on the treasury for the amount thereof.

*Error to District Court, Arapahoe County.*

IN the alternative writ the facts upon which the claim was based were set forth, and it was also alleged that the auditor had been requested to audit the account, and draw

his warrant upon the treasury in payment thereof. The command of the writ was, that the auditor audit and allow the said claim of the said county of Fremont, amounting to $1,425.27, and draw his warrant in payment thereof, or that he show cause, upon a day named, for his refusal so to do.

That portion of the return in which the auditor relied upon the want of any appropriation to pay the claim, was as follows :

3d. Because, at the time when each of the supposed demands were made as set forth in said writ, I had no authority to issue said warrant, but was, by law, prohibited from so doing, there being, at the time, no money in the treasury appropriated to pay the same, or any part thereof.

It will be observed that the claim mentioned in the writ all accrued in the year A. D. 1871, and it is not pretended that any demand was ever made upon me to audit said claim, and issue my warrant upon the treasurer of the territory therefor, until about the 10th day of *January*, A. D. 1872. At that date the appropriation which had been made to pay such claims, had ceased to exist, the law by which the appropriation was made expired by its own *limitation* on the 31*st day of December*, A. D. 1871, and from and after that date, the said claim became one of that class of claims "for money against the territory," and no appropriation "made by law to pay the same," and my duties relating to the same, were governed by sections 12 and 14, on page 78, of the Revised Statutes.

By reference to page 43 of the Laws of 1870, it will be seen that the *appropriation* to pay said claim, and claims of like character, was "for the fiscal years ending December 31, A. D. 1870, and December 31, A. D. 1871," two years. My construction of the law in this respect is made plain (if doubtful before) by section 4, page 62, of the Laws of 1872, which provides : "If any appropriation of any money heretofore made, or which shall hereafter be made, shall not have been, or shall not be expended within two years after the making of such appropriation, the same,

or any unexpended part thereof, *shall become a part of the general fund, provided, that if, by the terms of the law making an appropriation,* the expenditure of the same is to continue through *more than two years,* the provisions of this section shall not apply thereto."

Other portions of the return are sufficiently stated in the opinion of the court.

The relator demurred to the return, upon which there was a judgment for the respondent, and thereupon the relator sued out this writ of error.

Messrs. BROWNE & PUTNAM, for plaintiff in error.

Mr. ORRIS BLAKE, for defendant in error.

BELFORD, J. This was an application for a mandamus against the territorial auditor, to compel him to audit a claim, and to draw a warrant for the same on the treasurer, in favor of the board of county commissioners of Fremont county, for the maintenance and custody of two lunatics. An alternative writ issued, and in the return thereto it is alleged, as an excuse for not allowing the claim, that, in the opinion of the auditor, it was not only excessive and fraudulent, but that no appropriation had been made by the legislature to pay such claims, and that to draw a warrant for its payment was to violate the law. To the return a demurrer was filed and overruled, and this is the only error assigned. Where an officer is charged with the performance of a purely ministerial duty, and he fails to perform it, a writ will issue; but where it appears that the officer, as in this case, is called upon to audit and examine claims, and in doing so is invested with judicial powers, a court, while it may compel him to take action, will never dictate what his decision shall be, and this is the exact thing the plaintiffs in error asked.

The act prescribing the duties of the auditor provides "that, whenever he may think it necessary to the proper settlement of any account, he may examine the party's witnesses, and others, touching any thing material to be known,

in the settlement of such an account, and, for that purpose, may issue subpœnas, and compel witnesses to attend before him and give evidence, in the same manner, and by the same means allowed by law to courts of record.   That, if any person interested shall be dissatisfied with the decision of the auditor on any claim, account or credit, the auditor shall, at the request of such person, certify his decision, with the reasons therefor, specifying the items rejected, if less than the whole, and refer the same to the general assembly.   That, in all cases where the law recognizes a claim for money against the territory, and no appropriation shall be made by law to pay the same, the auditor shall audit and adjust the same, and give the claimant a certificate of the amount thereof, if demanded, and shall report the same to the general assembly, with as little delay as possible.   That no warrant shall be drawn by the auditor, or paid by the treasurer, unless the money has been previously appropriated.''

From these various provisions, it will be seen that the powers and duties of the auditor are something more than mere ministerial ones.   In *Brashear* v. *Mason*, 6 How. 102, it is said that the duties devolved on one at the head of one of the executive departments of the government, whether such duties are imposed by act of congress or by resolution, are not mere ministerial duties, and that the court could not act directly upon the officer, and guide or control his judgment or discretion in matters committed to his care in the ordinary discharge of his official duties.   If a party were to present a claim against the territory, and the auditor should refuse to examine it, the court would issue a writ commanding him to do so.   But this case is not of that character. We are asked to compel the auditor, not to audit the claim, but to allow and pay it, and this, too, when he believes that the same is excessive and fraudulent.   It further appears, from the return of the auditor, that he has been ready, at all times, to audit said claim, and allow so much of the same as appeared just and proper.   What more can be required of him?   Can it, under any circumstances, be said that a court

can compel him to do more ? If a court would enlist in such service, we might anticipate an organized raid on the public funds, and the court, instead of the auditor, would become the supervisor of accounts against the territory.

It is equally clear that, if the claim were a just one, we could not grant the writ.

No money can be drawn out of the treasury without an appropriation, and from a careful examination of the facts set out in the return, and which are admitted by the demurrer, we are of the opinion that no appropriation had been made for the payment of this claim. No fund was in existence. It being well settled that, before a writ will issue, a plain dereliction of duty must be established, and, seeing no evidence of such dereliction in this record, we must affirm the action of the court below, which is accordingly done, with costs.

*Affirmed.*