[No. 3964.]

STUART, ASSIGNEE OF THE COLORADO SAVINGS BANK v. NANCE (KEPHART SUBSTITUTED), STATE TREASURER.

1. MANDAMUS—STATE WARRANTS—PLEADING—BURDEN OF PROOF.

In a proceeding by mandamus to compel the state treasurer to pay a warrant, the alternative writ must allege all the facts which make it the duty of the treasurer to pay the same, and when such facts are put in issue by an      answer, the burden of proof is on the petitioner affirmatively to establish them and not on the treasurer to negative their existence, whether it be a preferred or non-preferred warrant, drawn upon a fund created by a continuing or biennial appropriation.

2. STATE WARRANTS—VALIDITY—PRESUMPTION.

Where no issue is made in the pleadings as to the validity of state warrants, no evidence is required as to their validity, but it will be presumed that the state auditor whose duty it is to investigate and determine the validity of claims before issuing warrants therefor did his duty and that the warrants are valid.

3.  APPROPRIATIONS—PREFERRED—EXPENSES OF GOVERNMENT.

The necessary appropriations to defray the expenses of the executive, legislative and judicial departments of the state government for each fiscal year, including interest on any valid public debt, are entitled to preference over any other appropriations from the public revenue of the state, without reference to the date of the passage of the acts making such appropriations.

4.  SAME.

As to preference of payment from public revenue of the state there is no distinction between the salaries of the officers of the executive, legislative and judicial departments and the salaries of the employees and other necessary incidental expenses of such departments, whether they be provided for by continuing appropriations or only by the general appropriation bill.

5.  APPROPRIATIONS—PRIORITY—DATE OF ACTS.

The priority of appropriations based upon the date of the taking effect of the respective acts making the appropriations does not apply to preferred appropriations, and applies to non-preferred appropriations only in case the general assembly has not otherwise legally provided.

6.  CONTINUING APPROPRIATIONS—PREFERRED CLAIMS.

A continuing appropriation is not necessarily a preferred claim against the public revenue of the state. All preferred appropriations, whether continuing or made by the legislature for each particular year are equal as to priority of payment. And an appropriation for a preferred purpose made at each session of the legislature will take precedence over a prior continuing appropriation for a non-preferred purpose.

7.  STATE WARRANTS—REGISTRATION—PRIORITY OF PAYMENT.

The statute requiring state warrants to be paid in the order of their registration is applicable only as between warrants of the same rank. In case of a shortage of the state revenue a warrant drawn in payment of a preferred claim though presented for payment and registered subsequent to the presentation and registration of a warrant for a non-preferred claim must, notwithstanding its later registry, be paid before the' earlier registered warrant for the non-preferred claim is paid.

8.  POWERS—ABUSE.

The fact that a power can be abused is no argument against the existence of such power.

*Appeal from the Court of Appeals.*

Mr. PHILO B. TOLLES and Mr. THOMAS D. COBBEY for ap-

pellant.

Mr. D. M. CAMPBELL attorney general and Mr. CALVIN E REED and Mr. DAN B. CAREY assistants attorney general, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This mandamus proceeding, begun in the district court of Arapahoe county, was to compel the state treasurer to pay a state warrant. The judgment was in favor of petitioner, which, on an appeal to the court of appeals by the state treasurer, was reversed and the cause remanded for a new trial. *Nance v. Stuart*, 7 Colo. App. 510.

Upon a second trial judgment was again rendered against the public officer, and upon his second appeal in the court of appeals, the judgment was also reversed. *Nance v. Stuart*, 12 Colo. App. 125.

The petitioner then appealed to this court, having properly raised a constitutional question. While the treasurer is content with the judgment, his counsel criticises certain statements of fact made, and some of the legal propositions laid down, by the learned writer of the opinions, upon which, in part at least, the judgment was based; while petitioner, dissatisfied with the conclusion there reached, maintains the correctness of the legal propositions attacked by the attorney general.

In the briefs filed in this court only one question is much discussed, and that is the only one which, in strictness, we are required to determine. But having jurisdiction, because of the constitutional question, we are permitted, under our practice, to go into all others presented by the record. And in view of prior decisions of this court, rendered since the ruling upon the first appeal was made, and in which was announced a doctrine different from that then declared by the court of appeals, we deem it a wise precautionary

measure again to enunciate the principles by which proced-
ure in trials of this character should be governed, and the
substantive law applicable to the duty of the state auditor
and treasurer in the issuing and payment of state warrants
in cases similar to the one at bar.

1.  The court of appeals, as will be observed by a reading
of its two opinions, held, "that where mandamus proceed-
ings were instituted against the state treasurer to compel the
payment of a warrant which was a preferred claim under an
actual or a continuing appropriation, and the petition exhib-
ited the fact that there was money in the treasury unex-
pended and not applicable to the payment of warrants for
which calls had been made, if the treasurer refused payment
because other warrants of the same class had been issued
and were duly registered in his office and therefore entitled
under the statute to priority of payment, it was encumbent
on him to plead a registry which would exhaust the money
in the treasury."  Doubt, however, was expressed as to the
soundness of the rule promulgated, and it was said that courts
might well differ in regard to it.  The reasons given for it
are concisely stated in the opinion.

Without restating our reasons for arriving at a different con-
clusion, we content ourselves by referring to our former decis-
ions in which we said that in a proceeding by mandamus to
compel the state treasurer to pay a warrant the alternative writ
must clearly allege all the facts which make it the duty of
the treasurer to pay the same, and when such facts are put in
issue by an answer, the burden of proof is on the petitioner
affirmatively to establish them, and not on the treasurer to
negative their existence.  In principle, it is immaterial
whether it be a preferred or a non-preferred warrant, drawn
upon a fund created by a continuing or biennial appropria-
tion.  *Nance v. The People*, 25 Colo. 252; *Kephart v. The
People, ante p.* 73.

2.  After the judgment upon the first appeal was reversed

and the cause remanded to the district court for a new trial, the attorney general, though insisting that the necessity of stating in the alternative writ, and, if denied, the burden of proving, all the facts necessary to show the duty of the treasurer to pay, lay with petitioner, nevertheless amended the return to correspond to the directions of the court of appeals, and by answer set forth the fact that of the revenues of the year 1889, against which the warrant in question was drawn, there were $89,000 in the state treasury, but before it was issued other warrants, of the same rank, had been issued and presented to the treasurer, countersigned and registered by him, more than sufficient to exhaust the entire fund, and therefore under the statute requiring him to pay warrants in their order of presentation, this one should not be paid.

There was no replication to this answer and it stood admitted. But because the court of appeals had ruled that the burden of showing these facts with reference to the prior warrants was upon the state treasurer, evidence was introduced by him in support of his answer. No issue was made touching the validity of the warrant. It is conceded that it was for the salary of one of the district judges, and, as such, is part of the necessary expenses of one of the three great departments of government, and, under previous decisions of this court, hereinafter referred to, constitutes a preferred claim upon the public revenues.

Wholly without reference to the evidence, the judgment rendered upon the last trial, because of insufficiency of the petition, could not stand, were it not that the defects of that pleading, under the doctrine of express aider, are made good by the answer. It was set aside, however, by the court of appeals for two reasons: *First*, because the trial court was wrong in its interpretation of the law; and, *second*, because no findings of facts were made by that court to which the law, as declared by the court of appeals, could be applied. It was also stated, as the opinion will disclose,

that that tribunal declined to organize itself into a *nisi prius* court to make findings of fact, particularly as the evidence in the record was so indefinite and uncertain that it was impossible to determine whether enough legal warrants of the same grade had been previously registered by the treasurer to consume the public revenues of 1889 then in the treasury and applicable to the payment of legal warrants issued for the fiscal year.

We cannot agree with the court of appeals as to some of the particulars mentioned in that opinion. No question was raised as to the validity of the warrant sued upon, nor was there any issue as to the validity of the 772 prior registered warrants described in the answer. There was no necessity, therefore, for determining whether or not any of them were valid obligations of the state. It must be presumed that the state auditor, whose duty it was to investigate and determine the validity of the claims for which these prior registered warrants were issued, did his duty, and his determination, evidenced by the issuing of the warrants, is, under the issues as they now are, conclusive upon the courts in this proceeding.

Yet we have reached the same conclusion to which the court of appeals came, but for a different reason. We think the case should be sent back for a new trial, and the court below directed to make specific findings of fact upon the question at issue under the present pleadings, viz., whether or not there were enough prior registered warrants of the same grade as that in suit to consume all the revenues in the treasury applicable to the payment of the warrants of that year, and upon such other issues of fact, if any, as may be raised by any admendments to the pleadings. One reason for the omission in this record, in this respect, doubtless is that the trial court erroneously, as we shall presently see, held that claims of legislative employes for their salaries, and for ordinary expenses of the three departments (aside

from salaries of constitutional and statutory officers) for which many of the prior registered warrants were issued, were inferior in grade to the one in suit. Another reason is that upon the second trial the parties were endeavoring to comply with the directions of the court of appeals contained in its opinion upon the first review. Both parties might well have supposed that the case was ultimately to be determined in accordance with those directions, and it is plain that neither party tried the case in accordance with the true theory. There was not, therefore, such a fair and full trial upon the issue of facts, under proper legal rules, as would enable an appellate court satisfactorily to make findings.

3. Without noticing in detail, or in the order followed by counsel, their specific arguments, we proceed to announce the substantive law governing the questions in this case, some of which were raised at the former trials, and others will become material if another trial is had.

It is now the firmly established doctrine in this jurisdiction, first enunciated in *In re Appropriations*, 13 Colo. 316, that the necessary appropriations to defray the expenses of the executive, legislative, and judicial departments of the state governments for each fiscal year, including interest on any valid public debt, are entitled to preference over any other appropriations from the public revenues of the state, without reference to the date of the passage of the acts of the general assembly by which they are made.

Approving these principles are the subsequent cases of *Henderson v. The People*, 17 Colo. 587; *Institute v. Henderson*, 18 Colo, 98; *Goodykoontz v. The People*, 20 Colo. 374. In *Parks v. Soldiers' and Sailors' Home*, 22 Colo. 86, in a comprehensive opinion by Chief Justice Hayt, the doctrine of the principal case was again approved, and its principles applied to the new question then before the court. Emphasis was laid on the previous announcements to the effect that in the event of deficiency of revenue to meet appropria-

tions, the necessary expenses of the executive, legislative and judicial departments of the state, and interest on the public debt are entitled to preference. The principal question, however, in that case was what officers belong to the executive department, and, as such, have preferred claims against the state. The conclusion was that:

"Every officer of this state who holds his position by election or appointment, and not by contract, and whose duties are defined by statute, and are in their nature continuous, and relate to the administration of the affairs of the state government, and whose salary is paid out of the public funds, is a public officer of either the legislative, executive or judicial department of the government, and may in the discretion of the legislature properly have his salary included in the general appropriation bill, and have the appropriation therefor take rank accordingly, and as the priority attaches not to the form of the act making the appropriation, but to the office, the priority of a particular appropriation will not be jeopardized if made by a separate act. Moreover, as the officers established by the constitution and those created by authorized legislative authority are usually required to keep offices, records, papers, etc., it is evident that expenses for these and like items may also be provided for as a part of the ordinary expenses of the legislative, executive and judicial departments of the government."

The court further said:

"It has also been determined that where appropriations are made in excess of the revenue, priority of date of the taking effect of the acts making such appropriations must govern after preferred appropriations are discharged."

It will be observed that the only constitutional classification of claims, as hitherto expressly decided by this court, is that of preferred claims and non-preferred claims. It is the position of petitioner here that under the principles of these cases, taking warrants as evidencing claims, the implied

holding was that there are three general classes: (1) All warrants issued for salaries of those filling constitutional and statutory offices under the three great departments of government and for which there are continuing appropriations; (2) warrants issued in payment of the expenses of said offices; (3) warrants drawn for salaries and expenses pertaining to educational, penal and reformatory institutions. A distinction is also drawn between officers and employes, the latter including those who hold their positions by contract. While it is conceded that warrants for salaries or wages of employes of the three departments and for all their contingent and incidental expenses constitute or represent preferred claims which must be paid in advance of salaries and expenses included within the third class, yet it is said that they are inferior to warrants for preferred claims of the first class, and therefore fall under the second class, since they properly are a part of the expenses of first-class offices. We may, by borrowing the language of the stock exchange, designate the contention by classifying claims, and warrants issued for them, as first preferred, second preferred, and common.

It is the contention of the attorney general that, so far as the question of priority is concerned, there is no distinction between warrants issued for salaries of constitutional and statutory officers, for salaries of employes of the three great departments of government, and the ordinary, incidental and contingent expenses of these departments, whether the appropriations are continual or biennial.

There may be, for some purposes, a scientific basis for this subdivision into two classes of preferred claims, as well as for the distinction between officers and employes, but, so far as any preference in time, or order, of payment from the public revenues is concerned, it has no foundation under the constitution or laws of this state, or the decisions of this court. The question before the court in *Parks v. Soldiers*

*and Sailors Home, supra,* called for the determination there made, and it was there repeated that expenses of the three great departments of the state might be met by the general appropriation bill. This necessarily implies that, as to liens or preferences on public revenue, there is no distinction in rank between, or difference in the relative importance of, the objects for which appropriations therein may be made. The state could not be maintained, and its three great departments could not effectively do their proper work without assistance of employes, and without stationery, rooms in which to work, and the various facilities which the performance of their duties demand. It is no convincing answer to the proposition under consideration that because the governor is the executive head of the state and the judges of the supreme court are members of the highest judicial tribunal, they are, for that reason, superior in rank, dignity and importance to the clerks employed to do clerical work for the members of the general assembly during the session of that body. That may be true in one sense; but in contemplation of law, salaries of such employes are entitled to the same preference as salaries of public officers. Whether the appropriation be for salaries of constitutional and statutory officers, or for employes of the three great departments, or for ordinary contingent and incidental expenses thereof,— each and all are constituent elements that go to make up the expenses of the state government proper, and no preference of one over the other attaches to warrants drawn therefor.

But it is said, since the appropriation for the salary of the district judges is a continuing appropriation, made by the constitution itself years before the biennial appropriation was passed to defray the ordinary expenses of the three departments for the year 1889, under the established doctrine that, in case of shortage of revenues, appropriations take effect in the order of the passage of the bills making them, this warrant takes precedence of all warrants drawn against

the fund created by the appropriation made in the general appropriaiion bill of that year.

This is a misapprehension, for, as will be seen from the language above quoted, this priority based on the date of the taking effect of the respective acts does not apply to preferred appropriations; and we may add, it applies to subsequent or deferred appropriations only in case the general assembly has not otherwise legally provided. This, it is said, has been done since the foregoing decisions were rendered, but the act is not retrospective, as counsel agree. Session laws 1897, page 21. All preferred appropriations for a given fiscal year, whether continuing or those made at the session of the legislature for that particular year, are of the same relative rank and importance. The fact that the appropriation for one such object is a continuing one, either by virtue of the constitution or statute law, does not give it priority over another of the same rank, but which is subsequently made in the general appropriation bill at a biennial session of the general assembly.

Counsel seem not to distinguish, at least are not disposed to admit of a distinction, between the idea of a continuing appropriation and a preferred claim; apparently supposing that a continuing appropriation is necessarily a preferred claim, and a noncontinuing or biennial appropriation, as compared with a continuing one, is necessarily a deferred claim. An illustration will serve to show the fallacy of this notion. This court has held that an appropriation for educational institutions is, in case of a shortage of revenue, postponed to an appropriation for the salaries of the officers of the three departments of government. There was, years ago, a special levy of a fractional mill tax made by statute to support the state university, and in the act providing for the levy there was also an appropriation of the revenues to be realized therefrom, which have been judicially declared continuing appropriations. Appropriations for the salaries of a

number of the officers of the three departments are made at each session of the general assembly, and not by continuing appropriations; but a subseqnent biennial appropriation for these salaries, in case of a shortage of revenues, would take precedence over a prior continuing appropriation for the state university. So it will be seen that there may be a clear distinction between a continuing appropriation and a preferred claim against the revenues of the state.

It is said, moreover, by petitioner that the inability of the treasurer to pay this warrant arises from the fact that a large number of illegal warrants were issued by the state auditor during the year 1889 and registered ahead of his legal warrant, presented to the treasurer, and by him paid, and thus the fund out of which the warrant in suit should have been paid was improperly disbursed.

It is further said that it is the duty of the auditor to issue different series of warrants, a separate series at least for preferred and non-preferred claims, and to consecutively number each. And it is further contended that it is the duty of the state treasurer to divide the public revenues into separate funds or accounts to correspond to the separate series of warrants. We are further told that the treasurer and auditor should have made a calculation as to the probable revenues for the year 1889 and ascertained, at the end of the session of the general assembly held that year, the total appropriations coming within the first, or preferred, class, and thereupon the treasurer ought to have set aside in a separate fund enough money to pay all preferred claims.

So far neither of these questions is in this case, in the sense that they affect the present judgment; for whatever may have been the dereliction of duty of former state auditors and treasurers, the present state treasurer, who has been substituted as respondent, is not responsible therefor. He is accountable only for the fund transferred to him on his induction into office. We consider it important, however, to give

expression to our views concerning the statute (1 Mills Ann. Stats. sec. 1802; Gen. Stats. 1883, sec. 1358) which requires the treasurer to pay warrants in the order in which they are presented for payment.

In *Kephart v. The People, ante* p. 73, we held, by implication at least, that the treasurer must observe the statutory direction. That method should be limited to cases where warrants are of the same rank. There was no intention of holding that in case of a shortage of public revenues a warrant drawn for a non-preferred claim, which has been presented and registered by the treasurer, is to be paid in advance of a warrant for a preferred claim, though subsequently drawn and registered. This, if sanctioned, would subordinate the constitution, as construed by this court, to the statute, and permit these executive officers, by arbitrary action in registering warrants, to nullify the decisions of the judicial department.

The statute itself contemplates a division of the public revenues into different funds, for it says: "Every fund in the hands of the state treasurer for disbursement shall be paid out in the order in which the warrants drawn thereon and payble out of the same are presented for payment. 1 Mills Ann. Stat. sec. 1802; Gen. Stats. 1883 sec. 1358. Compliance with this direction involves something more than a mere question of bookkeeping. In case of a shortage of the public revenues a warrant drawn in payment of a preferred claim, though presented for payment and registered subsequent to the presentation and registration of a warrant for a non-preferred, or deferred, claim, must, notwithstanding its later registry, be paid before payment of the earlier registered deferred claim. The auditor must take such steps and prescribe such regulations and safe guards in the issuing of a warrant, and the treasurer must do likewise as to the payment, as will, in case of such deficiency, secure this result.

It is scarcely necessary to remark that the rank and im-

portance of claims, and a division into preferred and non-preferred, become important only in case of a shortage of revenue. When there are ample funds to pay appropriations of all classes, these distinctions are ˙practically of no consequence.

There was another question raised in argument that may some time have to be decided. Suppose the revenues of any fiscal year are insufficient to pay the first class or preferred appropriations? Should warrants drawn upon the fund set apart for their payment be paid in full in the order of their presentation up to the full limit of the revenues applicable thereto, even though the payment of a portion of those registered will consume the entire fund, or should the amount of revenue be equitably apportioned, and the warrants paid *pro rata.*

That situation may some time confront us, but we must not assume that such a state of affairs now exists. We decline, therefore, to consider it until it becomes necessary.

It was strongly urged at the oral argument that if the court should determine that the wages of janitors of the capitol and the compensation of the clerks and other employes of the general assembly, and the expenses for carpets and for cleaning the same and renovating the rooms in which the constitutional officers do their work, and the expenses for stationery and pens and ink,—are all of the same rank and dignity as the salaries of the governor and of the officers of the executive and judicial departments, then we subordinate these departments to the legislative, and put it within the power of the latter, either by withholding appropriations for them, or by increasing the number and salaries of its own employes and enlarging its ordinary expenses, to consume for the legislative department alone all of the public revenues of the state.

This may be a persuasive argument to address to the members of a constitutional convention to dissuade them

from entrusting to the general assembly plenary power of this nature. But it is no argument against the existence of the power under the constitution as it is written. A similar argument could be made against the powers which unquestionably lie with the executive and judicial departments. The governor of the state may call out the militia to execute the laws, suppress insurrection or to repel invasion. He might be tempted to use the militia to enforce some personal end of his own not contemplated by the constitution, or to subvert the constitution itself. But this is no argument against the existence of the power which he undoubtedly has to call out the militia for a proper purpose, and we are not to presume that the governor would violate his duty.

So, too, the supreme court of this state may pass upon the constitutionality of every act passed by the general assembly. Merely because it has this power is no reason for supposing that it would abuse it and declare every valid act of the general assembly invalid, or hold constitutional every act clearly inhibited by the organic act. Neither are we justified in supposing that the general assembly will so far forget its duty as to neglect to make provision for the support of the coordinate branches of government, or that it will arbitrarily and recklessly so increase the expenses of the legislative department as that there will be no revenue left to defray the expenses of the others. When an attempt of that kind is made, there will be time enough for the courts to pass upon its action.

The judgment of the court of appeals is affirmed, and the cause remanded with instructions to that tribunal to reverse the judgment of the district court and remand the case for a new trial with further directions to the trial court to permit the parties to amend their pleadings as they may be advised to correspond to the rules of proceedure announced in this opinion; and if there be another trial, let it be in accordance with the law as declared in this opionion.

*Affirmed,*