[No. 7713.]

Post Printing and Publishing Co. et al. v. Shafroth.

.1. Constitutional Law—*Art. I, sec. 3*—The amendment to sec. 3 of art. xi. of the constitution (Laws 1909, c. 148) providing for the issue of bonds for discharging outstanding warrants of the state, that certain executive officers shall constitute a board to determine the amounts fairly and equitably payable out of this fund upon the warrants, and that upon their report to the auditor, certain other executive officers may exchange the bonds for an equal amount of the warrants, but with no provision which compels the holder of any warrant to accept the bonds in lieu of money, has not the effect to deprive any person of property without due process of law.

Nor is it in conflict with the provisions of the constitution relating to the distribution of the powers of government (art. III.) as conferring judicial powers upon executive officers.

Nor in conflict with sec. 4 of the same article.

Nor with sec. 3 of art. IX.

Nor with the federal constitution, as impairing the obligation of contracts.

The debt funding board provided for by this amendment becomes *functus officio*, immediately upon determining the disposition of the fund provided for by the amendment.

2. ——*Amendment of the Constitution—Effect*—The people of the state have the rightful power to provide by an amendment of the constitution for the liquidation of outstanding warrants of the state, without reference to the form of the debt, or obligation.

That the people have heretofore rejected a proposed amendment for refunding the same warrants upon terms much less liberal to the holders thereof is not a matter for judicial consideration.

*Error to Denver District Court.*—Hon. Greeley W. Whitford, Judge.

Mr. John T. Bottom, Mr. Milnor E. Gleaves, for plaintiffs in error.

Hon. Benjamin Griffith, attorney general, Messrs, Henry J. Hersey, F. A. Williams, H. N. Hawkins, William B. Tebbetts, Messrs. Dugan & Brayton, and Messrs. Pershing & Titsworth, for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court:

The seventeenth general assembly submitted to a vote of the people an amendment to section 3 of article XI of the constitution, which, as expressed by its title, was,

"* * * To provide for the creation of a bonded indebtedness on behalf of the state to an amount not exceeding two million, one hundred and fifteen thousand dollars, for the purpose of funding outstanding warrants of the state, and to provide for the issue and payment of said bonds." Session Laws, 1909, p. 315.

The state board of canvassers canvassed and certified the result of such election, which disclosed that the amendment had been adopted. Thereafter, this suit was instituted by the plaintiffs in error, one being a Colorado corporation, the other two, resident electors of the state, freehold taxpayers and owners of an outstanding unpaid warrant issued during one of the years named in the constitutional amendment, and being one of the warrants which evidently was intended, at the option of the holder, to be taken care of in the manner provided by this amendment. The suit is brought not alone upon behalf of the plaintiffs in error, but in the interest of all corporations and individuals similarly situated.

The complaint shows, that the executive officers of the state, some of the defendants below, constituted the state board of canvassers, and as such canvassed the vote cast for and against this constitutional amendment as required therein; that the canvass showed it had been adopted; that certain of the other defendants, as executive officers of the state, had, prior to the institution of the suit, organized as commanded by the act, into a debt-funding board, and were about to enter upon such duties, as provided by the amendment.

The complaint sets forth sundry general allegations pertaining to frauds and irregularities in the election sufficient to change the result, with the further statement that the plaintiffs have much detail information regarding frauds and

irregularities in the canvass of the votes in different precincts in the different counties, and the canvass of the votes as returned from the different precincts by the county board of canvassers in the different counties, etc., which the plaintiffs ask leave to set forth at length in a supplemental complaint or bill of particulars, should it not be determined that the act was void. Thereafter, by supplemental complaint the plaintiffs were allowed to set forth their allegations of fraud, etc., pertaining to said election; some of which, upon motion, were stricken and some were answered by denials, etc.

The theory upon which the complaint is drafted, evidently, is to have tested in one suit three or four different methods of attack upon the validity of the constitutional amendment, and certain provisions therein; also, a contest of the election itself, in that it prays:

First, for a restraining order to prevent the debt-funding board from considering and determining the amount which should fairly or equitably be paid upon any of the warrants mentioned in the act, and from making and filing with the auditor of state any statement pertaining thereto, and to prevent the officers authorized from issuing any bonds in accordance with the mandates of the act.

Second, that the act be decreed to be unconstitutional, null and void.

Third, that if for any reason or reasons the pretended amendment should not be declared unconstitutional, that the court should issue a writ of mandamus directed to the board of state canvassers directing them to reconvene, and recanvass the vote on said constitutional amendment, authorizing them, in proper cases, to hear evidence touching the alleged frauds and irregularities in the vote thereon, and the frauds, mistakes and errors alleged in the canvass of the vote in different precincts, etc., or, in lieu thereof, that the court take jurisdiction of the matter and permit the plaintiffs to contest said election in this suit.

At the trial (although permitted so to do under the issues as made) the plaintiffs elected not to offer any evidence as to the alleged frauds or irregularities pertaining to the election, but stated that they would rely upon the law questions raised by the pleadings and admitted facts, which, under the issues as then made (whether proper or not), called for a determination of the validity of the constitutional amendment itself.

Judgment was for the defendants declaring the amendment valid, dissolving the temporary injunction, and dismissing the bill. The plaintiffs bring the case here for review upon error.

The learned attorney general and the many able gentlemen of counsel associated with him in this matter have filed a very exhaustive brief in which they earnestly urge and point out many alleged reasons why this action cannot be maintained. Their reasons can be summarized as follows:

First, that the court is without jurisdiction of either the subject-matter or the persons of the respondents who are the executive officers of the state. (a) Because the question involved is political and governmental. (b) Because no means of contesting the election have been provided by law, and the decision of the state canvassing board is final and conclusive. (c) Because the state canvassing board is *functus officio*. (d) Because the state canvassing board is not subject to the jurisdiction or control of any court.

Second, that by their demurrer it is shown, there is a misjoinder of parties plaintiffs.

Third, A misjoinder of parties defendant.

Fourth, that several pretended causes of action have been improperly united, to-wit, that a pretended cause of action in equity against the governor and other executive officers as a debt-funding board is improperly united with a pretended cause of action in the nature of an application for mandamus to the alleged board of state canvassers; that said several causes of action do not affect or concern the same parties or

defendants, nor do they severally affect all the defendants, nor do they affect or concern the defendants in the same characters or capacities.

Fifth, that the several pretended causes of action are inconsistent one with the other, and are not such as may lawfully or properly be joined or prosecuted in one action or proceeding.

Sixth, that the complaint does not state facts sufficient to constitute any cause or right of action, or to authorize an injunction, or to require the defendant officers to answer or to authorize any equitable or other relief against them in any capacity or relation whatever; that most of these grounds go to the question of jurisdiction, and were not waived by answer; but in any event if otherwise they ought to be considered by this court in view of the fact that the defendants are sued as the executive officers of the state, and the question involved is the constitutionality of a constitutional amendment.

As all questions of fraud pertaining to the election were eliminated by the plaintiffs themselves, and the trial court, whether correctly or otherwise, having gone to the bottom of the main contention by passing upon the constitutionality of the act; without determining any of the other questions raised by the attorney general, and without passing upon, approving or disapproving, as a precedent, this method of procedure, owing to the great importance of the constitutional questions raised, we deem it advisable to consider and determine these main contentions as disposed of by the trial court.

If we correctly understand the position of the plaintiffs in error, it is that this amendment to the constitution is itself unconstitutional, null and void, for five different reasons:

First, because no provision is therein made for contesting the election of the vote upon the amendment.

Second, because the plaintiffs in error and other warrant-holders are deprived of their property without due process of law, and denied the equal protection of the laws in violation of the federal constitution, which they allege gives to them the

right as warrant-holders and taxpayers to have their rights determined in the regularly constitutionally established courts of the state.

Third, because the alleged amendment contravenes article III of our constitution which provides for the three departments of governments, and that the powers properly belonging to one department shall not be exercised by either of the others, and also because it contravenes section 1 of article VI of our constitution, which provides that the judicial power of the state shall be vested in the supreme court, district courts, county courts, justices of the peace and such other courts as may be provided by law, and also section 6 of article II which provides that courts of justice shall be open, etc., in that this amendment attempts to delegate to executive and ministerial officers judicial powers.

Fourth, because it contravenes section 4 of article XI of our constitution, which provides that no debt shall be created under authority of that article except by a law which shall be irrepealable until the indebtedness shall have been fully paid or discharged, and which shall specify the purposes to which the funds raised shall be applied, and providing for a tax levy therefor, etc.

Fifth, that the alleged constitutional amendment violates the federal constitution in that it impairs the obligations of contracts and previously subsisting rights or liabilities.

If the provisions complained of were statutory, than many of the contentions urged would be applicable, some of which would be well taken, but when we consider that the amendment itself is a part of the constitution and entitled to the same consideration as such as any other portion of that instrument, it can then be readily ascertained that it is not subject to the sundry attacks made upon it, and that most, if not all, of the cases cited to support them are inapplicable to the language used, or are not in point when applied to a constitutional amendment.

We will consider the reasons urged in the order referred to. The first, that the act is void because it makes no provision for a contest of the election under which it is held, is not discussed in the briefs and is evidently abandoned. No reasons are given why this should be done, and no section of our state or the federal constitution is cited to support the assignment; besides, whether correctly allowed or not, the plaintiffs in error were given this right of contest in the trial court, but expressly declined, upon their own statement, to offer any evidence to sustain it. .

The second and third assignments are earnestly urged. Referring to the second, counsel say:

"Every person has the right to the judgment of a duly constituted judicial tribunal upon his suit, and he cannot be finally bound by a delegated exercise of judicial power by a legislative or other act pretending to devolve judicial duties on executive or ministerial officers; and any attempt thereto is null and void."

Many cases, including some of our own, are cited in support of this position. The difficulty with this line of argument is its applicability to the language used in the amendment to which it is sought to be applied. They say the act is void because it deprives them of property without due process of law, and denies them the equal protection of the laws, because judicial powers are conferred upon a non-judicial body, but they fail to point out wherein they are deprived of any property, or denied due process of law, or the equal protection of the law.                           ;

The preamble to this amendment discloses that the warrants, the adjustment of which is provided for by this constitutional amendment, have been in existence in time ranging from fifteen to twenty years, without the possibility of enforcement, so far as any process in the courts of the state is concerned, because the revenues for the years during which these respective warrants were drawn have been exhausted, and as the state cannot be sued by an individual, there is no possible

means by which any individual holder of these warrants can enforce or obtain the payment thereof. Moreover, nowhere in the amendment is there any provision which compels the plaintiffs in error, or any other warrant-holder to accept the offer and take bonds in lieu of these warrants; if warrant-holders choose not to accept the offer made by the constitutional amendment, they can hold their warrants and await further action, or take such further steps as they may be advised. It is not incumbent upon them to accept the benefit of the act, and if they do not, there is nothing in the language which indicates that it was intended to place them in any different position than they were prior to its adoption. It takes nothing from them, neither does it adversely affect the validity of anything which they hold. If it is not their wish or desire to have their claims adjusted in this manner there is no attempt to compel them to do so. In this respect, the cases cited by counsel are not applicable because the facts involved are in no sense like the facts under consideration. We fail to find wherein the plaintiffs are deprived of any property without due process of law by this constitutional amendment.

The preamble further discloses, that a large amount of these warrants were issued in payment of the expenses of the executive, legislative and judicial departments of the state; that they were allowed to go unpaid, and that the finances of the state reached such a condition that they could not thereafter be paid by the revenues secured from the years during which they were issued. Some of the reasons are disclosed by the decision of this court *In Re Appropriations,* 13 Colo. 316.

The evident purpose of this amendment is to provide for the liquidation of these debts of honor, although in one sense illegal under our constitution, and for which reasons a dishonored debt which could not heretofore be collected or enforced by legal process in the courts.—*Nance v. Stuart,* 12 Colo. App. 125; *In Re Continuing Appropriations,* 18 Colo.

192; *Stuart v. Nance,* 28 Colo. 194; *Kephart v. The People,* 28 Colo. 73;*Crouter v. Bennet,* 34 Colo. 120.

That the people have the right, by way of amendment. to their constitution, to recognize and provide for the liquidation of these outstanding warrants is not debatable, even if otherwise void so far as enforcement is concerned. The validity of the amendment does not depend upon the form of the debt or obligation funded, but upon the power of the state to contract indebtedness, and, incidentally, to prescribe the terms and conditions for its payment. In this respect whatever was wanted in legislative power for that purpose, by reason of existing constitutional limitation, was supplied by the action of the whole people of the state under their reserve right to amend the constitution.—Section 2, article II, Colorado constitution; *People v. Sours,* 31 Colo. 369.

The contention that it is violative of certain other sections of the state constitution because judicial powers are said to be conferred upon the executive officers of the state, is based upon a misconception of what is due process of law, and what are the judicial powers contemplated in the constitution. To carry into effect the authority conferred by this amendment, it was the duty of the legislature to provide a means of identifying the indebtedness to be funded, as well as to provide in some manner for the issuing of the bonds by the executive officers.

It will be observed that this constitutional amendment provides only a method for the disposition of a certain amount of bonds to be issued upon behalf of the state among certain designated people, for which purpose a board is created composed of the highest executive officers of the state. It is optional with the holders of warrants to receive any portion of this fund tendered them for the surrender of their warrants. This board does not determine the validity or invalidity of the warrants so held by them, or their right, power, or authority, or lack of authority, to enforce the payment of the same; but only the question of the amount which should fairly

and equitably be paid out of this fund and which must be an honest obligation of the state. As a practical proposition, however, it would appear that, had there been any other remedy for the enforcement of these obligations, it would have been brought into execution many years ago, as unquestionably many of these warrants should have been, and would have been paid years ago had any method been in existence for their collection.

We think it will be conceded that the amendment could have included the names of the persons to whom this money should have been paid and the amount to each, but in lieu thereof, following the recognized practice of this state, that power was delegated to a board composed of certain executive officers.

Similar powers and duties by executive officers and boards in the auditing and allowance of claims, and the funding of public indebtedness, both by constitutional provisions and legislative enactments, have repeatedly been adopted in this state. Without being understood as passing upon the constitutionality of any such legislative enactments, we call attention to a few of the many heretofore in force. The auditor of state is authorized to audit and settle all claims against the state, and to issue warrants in payment therefor, thereby deciding, who is entitled to a warrant, the amount of the indebtedness, etc.

Sections 6204 and 6234, Revised Statutes, 1908. Our statutes have always required that persons having claims against the state shall exhibit them with the evidence in support thereof to the auditor to be by him audited, settled and allowed. Section 6232, *supra*.

Also, that the auditor may examine the parties, witness and others on oath touching matters material to be known in the settlement of such accounts; he may issue subpoenas and compel witnesses to attend before him and give evidence in the same manner and by the same means allowed by law to courts of record. Section 6234, *supra*.

Section 6238, *supra,* provides that in case any person shall be dissatisfied with the decision of the auditor on any claim, account or credit, the auditor shall, at his request, certify his decisions with his reasons therefor, specifying the items rejected, if less than the whole, and refer the same to the general assembly. It will be noted that the appeal (if it may be called such) is taken by the aggrieved party, not to the courts, but to the general assembly, although the powers thus vested in the auditor are much more of a judicial character than the power vested in this debt-funding board by this constitutional amendment.

By the act of 1895 the governor, attorney general and auditor were given power to audit the deficiency and insurrection claims of 1893 and 1894 and to issue funding bonds in payment therefor. Section 2697, Revised Statutes 1908.

A similar board was created to audit the insurrection claims of 1896 and 1897. Section 2699, Revised Statutes 1908.

Other insurrection claims were authorized to be audited by a board composed of executive officers, by the act of 1907. Sections 2707 to 2713, Revised Statutes 1908.

It will thus be observed that this method of determining claims against the state has been recognized and the same duties imposed and powers given by statutes covering a long period of time. This court has held that a mandamus will not lie to compel the auditor to allow a claim, saying,

"* * * * where it appears that the officer, as in this case, is called upon to audit and examine claims, and in doing so is invested with judicial powers, a court, while it may compel him to take action, will never dictate what his decision shall be." *The People v. The Auditor, etc.,* 2 Colo. 97; *Approved in Keefe Mfg. & Inv. Co. v. School District,* 33 Colo. 513.

Boards for the audit and adjustment of public indebtedness and claims against the states are very common instru-

mentalities in the administration of their finances. 36 Cyc. 900-906.

The law is well settled in this jurisdiction that a part of the constitution is not unconstitutional because it authorizes the enactment of legislation which confers quasi judicial powers upon executive officers. For instance, section 8 of article XVI of the constitution reads:

"The general assembly shall provide by law that the board of county commissioners in their respective counties, shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations."

In 1879 our legislature enacted such a provision, which, unquestionably conferred at least quasi judicial powers upon such boards. The constitutionality of this act has not only repeatedly been sustained by this court, but it has gone further and held that by the language used in the act there is no appeal from the decision of the county commissioners fixing such rates.—*Golden Canal Company v. Bright*, 8 Colo. 144; *S. B. & R. C. D. Co. v. Marfell*, 15 Colo. 302.

By the adoption of this amendment the people have vested this board with the power of auditing and the adjustment of these claims, to the extent of determining what amount shall be paid out of this fund; it is a misconception of the nature and functions of their duties to assume that the act purports to delegate to them powers properly belonging to the judicial branch of the government, in any constitutional sense, or that, the powers or duties enjoined upon them encroach upon the general law or equity jurisdiction vested in the courts by any other part of the constitution.—*Trimble v. People, etc.*, 19 Colo. 187; *Merwin v. Boulder County*, 29 Colo. 169; *Am. Sulphur & Min. Co. v. Brennen*, 20 Colo. App. 439; *O'Hara v. State*, 112 N. Y. App. 146; *United States v. Ferreira*, 13 How, (U. S.), 40; *Murray's Lessee et al. v. Hoboken Land & Imp. Co.*, 18 How. (U. S.), 272; *Dreyer v. Illinois*, 187 U. S.

71; *Oceanic Navigation Co. v. Stranahan,* 214 U. S. 320;
*State R. R. Commission v. People,* 44 Colo. 345.

The determination of the disposition of this fund being
the extent of the power granted to this debt-funding board,
when they have finished this duty, as a board, they become
*functus officio.* As the above is about all the act authorizes
them to do, it is unnecessary to further consider the contentions
made pertaining to any other power or authority which they
might attempt to exercise; it consists of the highest executive
officers of the state. They are required to take an oath; it is
to be presumed that they will faithfully and honestly perform
the duties thus conferred upon them and nothing more.—
*Nance v. The People,* 25 Colo. 252.

The fourth contention that this amendment contravenes
section 4 of article XI of the constitution which provides that
no debt shall be created under authority of that article except
by a law which shall be irrepealable until the indebtedness shall
have been fully paid or discharged, and which shall specify
the purposes to which the funds raised shall be applied, pro-
viding for a tax levy therefor, etc. This contention, like many
others urged, might be applicable if applied as a limitation
upon the legislature, but when we consider that the objection
is urged against an amendment to this article, which amend-
ment itself creates the debt, provides the amount, term and the
rate of interest of the bonds, how the proceeds raised shall be
applied, etc.; we are unable to appreciate the force of the ob-
jection to it. In any event, if it conflicts with any previous
existing provision of the article which it amends, it was un-
questionably the purpose in amending to change the funda-
mental law in this respect, and if there is a conflict, the amend-
ment must be considered as controlling.—*People v. Sours,* 31
Colo. 369; *People v. Cassiday,* 50 Colo. 503.

The fifth contention is, that it violates the federal con-
stitution in that it impairs the obligation of the contract and
previously subsisting rights or liabilities. It is debatable if
this question is properly before us for determination for the

reason that it does not appear from the record that it was directly raised by the pleadings, presented to or considered by the trial court. As a general rule it has been the practice of this court to only consider and pass upon questions which were raised in and called to the attention of the trial court. On review a consideration of the errors assigned are usually limited to the grounds of error to which the attention of the trial court was directed.—*Land & Town Co. v. Patton,* 21 Colo. 503; *Antlers Park R. H. Co. v. Cunningham,* 29 Colo. 284; *Schlageter v. Cude,* 30 Colo. 310; *United States Co. v. Newton,* 50 Colo. 379; *Jackson v. City of Denver,* 41 Colo. 363; *Stratton C. C. M. & D. Co. v. Ellison,* 42 Colo. 498; *Sternberger et al. v. Seaton Min. Co.,* 45 Colo. 401.

This seems to be the general practice by appellate courts. —*Spies v. Illinois,* 123 U. S. 131; *Baldwin v. Kansas,* 129 U. S. 52; *Erie R. R. Co. v. Purdy,* 185 U. S. 148.

But if properly presented this question could be summarily disposed of by the negative answers (to the alleged facts) given to the second and third contentions urged.

In *Kephart v. The People,* 28 Colo. 73, this court said, as to one of these warrants then before it, that it could not order it to be paid under the law as it then stood; such being the case this amendment, without attempting to impair the obligation of the contract, or to take away from the holder any subsisting right, was intended to provide to the holders of these warrants (if they cared to accept it) with a new right, an additional method or remedy for their adjustment. It is left entirely optional with the holders whether they will accept this new right or not. If they do not wish to do so they can keep their warrants with all the rights, obligations and liabilities originally attached to the same, wholly and entirely unimpaired, so far as previously subsisting rights under contract are concerned. On the other hand, the amendment gives to the holders a new and additional opportunity from that which they have heretofore possessed to have such portion of their warrants and interest now paid out of a cer-

tain fund created for that purpose as the debt-funding board shall determine is an honest obligation of the state. If they are not satisfied with the result of their action, we find nothing in this amendment which attempts to preclude them from securing further action by the way of a constitutional amendment or otherwise, as they may be advised in their efforts to have their warrants taken care of by the state.

This being the clear intent and purposes of the act and nothing more, it makes unnecessary any discussion or determination (if properly here) of the validity of the warrants as contracts of the state or otherwise, the effect of retrospective acts in character or *ex post facto* laws in conflict with the federal or state constitution.

In this connection it is urged, that the public school fund is forced to accept three per cent interest bearing bonds of the state in lieu of six per cent interest bearing warrants; that the school fund is entitled to six per cent interest as a part of the contract of these warrants until the time of actual payment. Upon the other side, the contention is made that the only interest that plaintiffs in error have in this matter would be as taxpayers and as such that their argument is entirely antagonistic to their interest; for as taxpayers the only effect upon them would be in the payment of interest and therefore beneficial to them as such to have the interest reduced from six to three per cent. Further, that the whole people are the real owners of the school fund; that the major portion of the indebtedness sought to be funded is held in this fund; that for many years they have been deprived of their interest thereon; that the people, the owners of the school fund have said by adopting this constitutional amendment that they desire it to be redeemed in state bonds drawing three per cent interest and of this neither the plaintiffs nor any other taxpayer can successfully complain. Without determining as a precedent whether the question can be thus raised, we think that the act is not subject to the objection urged. Section 3 of article IX of the constitution provides, that the public school fund

of the state shall forever remain inviolate and intact; that the interest thereon only shall be expended in the maintenance of the schools; that no part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as in this section provided; that the treasurer shall be the custodian of this fund; that the same shall be securely and profitably invested as may be by law directed; and, that the state shall supply all losses thereof that may in any manner occur. From this language it follows as stated by this court in *In Re Loan of School Fund,* 18 Colo. 195, 199.

"The security of the investment is of the first and highest importance.

It may in some cases be difficult to determine in advance whether a proposed investment of the school fund will be secure as well as profitable. In general, legislation respecting such matters must be left to the wisdom and discretion of the general assembly and of the chief executive of the state."

It appears that in the past large amounts of this fund have been invested in these warrants, which, up to the time of the adoption of this amendment, have proven of no present value to the school fund in the securing of interest thereon, although they call for the payment of six per cent. per annum. Such being the case, it was thought proper, both by the legislature and the people, to, in this way, pay off this investment and provide for the re-investment of the principal in better securities, viz., bonds of the state. It will be noted that the act provides for the absolute payment of all the accrued interest up to date and a substitution or exchange for the warrants of interest bearing bonds drawing interest at the rate of three per cent. per annum; hereafter, the school fund is to have bonds with a provision in the constitution for the payment of the interest and the ultimate payment of the principal. Suppose, instead of requiring the deposit of these bonds in the school fund in payment of the principal of the warrants held therein at the time of the exchange, the act had provided for the sale of all the bonds and the payment to the school fund in money of the

entire amount of the indebtedness, and also authorized the investment of that money in the bonds of the state, or of the United States, or other securities drawing interest at the rate of three per cent. per annum, the like result could probably have been reached.

It must be conceded that by legislative enactment these funds could be invested in interest bearing securities at three per cent. per annum, or even a less amount. As a general rule it is a correct enunciation of the law that a thing can not be done indirectly which can not be done directly; is not the converse likewise true, that a thing can be done indirectly which can be done directly?

The payment of all interest upon these warrants held in the school fund having been provided for, and authority having been given in this manner for the taking up of the warrants and the investment of the principal in the bonds of the state, bearing interest at the rate of three per cent. per annum, we are of opinion that section 3 of article IX of the constitution has been fully complied with in this respect, and, that the whole people of the state have declared their determination to keep, and by this act have kept, faith with the provisions of the enabling act relative to the school fund under which it was created.

If it had any bearing upon the questions, we might concede the justness of the criticism as against the whole people of the state in repeatedly heretofore rejecting proposed constitutional amendments, providing for the adjustment and refunding of these outstanding warrants, and, thereafter in the adoption of this one which is much more liberal in its provisions than the ones heretofore rejected. But as this is a matter which the entire people had the right to decide for themselves, in the manner desired by themselves, and having so decided it, the policy or wisdom of the method is something with which this court has no concern, regardless of the previous history pertaining to it; otherwise, to give such matters any weight would be to have the judicial department of the state substi-

tute or take into consideration its judgment as contra-distin-
guished not only to that of the legislature, but to that of the
whole people declared by and in a constitutional amendment.
This ought not to be, and is something which all the authori-
ties hold can not be done.

The judgment is affirmed.                          *Affirmed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL not participating.