[No. 5702.]

STERNBERGER ET AL. v. SEATON MINING COMPANY.

1. **Water—Riparian. Rights**—The doctrine of the common law that a land owner is entitled to have the waters of every natural stream which traverses his land, flow continuously in their natural course, rejected.—(403)

2. **Corporations—Purpose of Organization** — A corporation may lawfully be organized for the generation and sale of light, heat and power.—(404, 405)

3. **Pleading—Legal Conclusions**—An averment that a proposed diversion of water is for "speculative purposes" is a mere conclusion. The pleader should, in such case, aver what particular use has been made or is intended, so that the court may determine its character.—(406)

**Construction** — Complaint construed to ground the action upon the unlawful diversion of the waters of a natural stream upon plaintiff's premises, not upon the invasion of plaintiff's lands.—(407)

4. **Appeals— Party to Cannot Shift Ground** — Appellant is not to be permitted to shift his ground from the contentions made in the court below.—(408)

26

*Appeal from Clear Creek District Court*—Hon. A. H. DeFRANCE, Judge.

Messrs. HERSEY & PONSFORD, for appellant.

Mr. E. M. SABIN, Mr. J. B. HUTCHINSON, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The object of this action is to enjoin defendant from diverting the waters of South Clear Creek, a natural stream. Plaintiffs are owners of - land through which, they say, the waters of the stream have hitherto been accustomed to flow in their natural channel, until defendant, by its wrongful acts, diverted them into an artificial course. Before defendant's rights, if any, accrued, plaintiffs' grantor acquired by patent the lands from the United States government under the public land laws of congress, as of date July 1st, 1868, while our territorial form of government was in existence and before the formation of our state. Plaintiffs do not claim that they or their grantor ever made an appropriation of water from the stream for any purpose recognized as lawful under the laws of this state, and their complaint contains no such statement. True, that pleading recites that the waters were at one time used in placer mining; but it also states that such use has long since been abandoned, and while there is another, but defective, averment that a diversion was once made for the purpose of irrigating their agricultural lands, plaintiffs in no way connect themselves, either as appropriators or grantees of the appropriators, with either of such uses. Not only from the complaint, but from the briefs of plaintiffs' counsel, it is entirely clear that they relied below solely upon their assumed common-law rights as ri-

parian owners, which, since title thereto was acquired anterior to the adoption of our state constitution, and before the appropriation of defendant was made, they assert are superior to the latter. We are entirely satisfied that the sole question argued and submitted to the trial court by counsel on both sides, was whether the common-law doctrine of continuous flow, under the facts disclosed by this record, exists in Colorado. At this late day it would seem to us, as it evidently did to the trial court, idle to make such contention in this state. The matter has long ago been set at rest. The authorities relied upon by plaintiffs are those which sustain the so-called California doctrine, first clearly and definitely announced by the supreme court of California in *Lux v. Haggin,* 69 Cal. 255, in which, *inter alia,* it was held that the common law, as to riparian ownership, was not abolished by any law of that state, but still existed there, side by side with the doctrine of appropriation. The states whose courts accept, and those whose tribunals reject, the California doctrine, and adhere to the so-called Colorado rule, are enumerated, and the various decisions collated, in Water Rights in the Western States, by Weil, at sections 16 and 17. The supreme court of the United States, in several cases, has approved and indicated its satisfaction with the decisions of the state courts which hold that the common-law doctrine has been abolished, and has said that each state, without interference by the federal courts, may for itself, and as between rival individual claimants, determine which doctrine shall be therein enforced.—*Atchison v. Peterson,* 20 Wall. 507; *Basey v. Gallagher,* 20 Wall. 670; *U. S. v. Rio Grande, etc., Co.,* 174 U. S. 690; *Clark v. Nash,* 198 U. S. 361, 370; *Kansas v. Colo.,* 206 U. S. 46-94.

There is no departure therefrom in *Hartman v.*

*Tresise*, 36 Colo. 146. Under the facts of that case, in a controversy between one who asserted a private, and one who relied on a public, right of fishery in the waters of this state, it was held that the right of the former was superior; but the court expressly recognized that both such rights yielded to the superior right of appropriation as it has existed in this state from the beginning, saying: "As between those claiming either a public or private right of fishery in our natural streams, and those asserting the superior constitutional right of appropriation, the latter, in case of conflict, must prevail." The doctrine in this state that the common-law rule of continuous flow of natural streams is abolished, is so firmly established by our constitution, the statutes of the territory and the state, and by many decisions of this court, that we decline to reopen or reconsider it, however interesting discussion thereof might otherwise be, and notwithstanding its importance. Perhaps the leading case in this state is *Coffin v. Left Hand Ditch Co.*, 6 Colo. 443. Others to like effect are: *Thomas v. Guiraud*, 6 Colo. 530; *Crippen v. White et al.*, 28 Colo. 298. A recent case, *Willey v. Decker*, 11 Wyo. 496, is in harmony with the Colorado doctrine, and therein Potter, Justice, in an able and exhaustive opinion, reviews the important cases from the various states and territories.

At the oral argument, plaintiffs were represented by counsel whose first appearance in the cause was then entered. Doubtless perceiving that, to uphold plaintiffs' cause of action as made by their complaint, and as tried and submitted below, would necessitate the reversal of an unbroken line of decisions of this court from the beginning to the present time, result in tearing up, root and branch, the statute law of the territory and of the state, and the nullification of the provisions of the constitution itself

on the subject of appropriation, this counsel advances the theory that, if all the allegations of the complaint relating to riparian rights are eliminated, and if we should hold, as it must have been obvious to him that we would, that the common-law rule of continuous flow is abolished, still the complaint states a good cause of action. He claims that this case falls within the rule announced in *United States Freehold Land and Emigration Company v. Gallegos et al.*, 89 Fed. Rep. 769, where it was held that, in Colorado, a riparian owner who has made no appropriation himself, but solely on the strength of such ownership, may enjoin a mere trespasser from diverting the waters of a natural stream which flows through his riparian lands. The complaint in the case cited is far different from the complaint in the case at bar. There defendant's appropriation, as such, was under an unfounded claim of right—in other words, he made no appropriation at all. There is no such allegation or showing in this complaint. The only attempt in that direction consists in the averment that the diversion was not made in good faith, and is for speculative purposes. That the acts of diversion and carrying and application of the quantity diverted were, each and all, performed, is conceded, but the particular contention, in argument, is that, since a speculative is not a beneficial use, one of the essential elements of a valid appropriation, viz., an application to a beneficial purpose, is lacking; hence, no appropriation at all, under the definition of that term, has been made by defendant. The averments of the complaint in this respect are neither apt nor effectual. The corporate name of defendant, as sec. 846, Rev. Stats. of Colo., 1908, requires, indicates the business which defendant proposes to carry on, namely, the manufacture and generation and sale of light, heat, and power. Such things constitute a

perfectly legitimate business under the laws of this state, and a corporation so organized is entitled to invoke the power of eminent domain.—*Lamborn v. Bell*, 18 Colo. 346.

Not only the name of the corporation, but certain allegations of the complaint, indicate that defendant corporation was organized for a legitimate purpose, and can lawfully acquire, by making an appropriation in its own behalf, or by purchase, a valid appropriation of the waters of a natural stream in this state, by using which, as an agency, it may produce and sell light, heat and power. The mere allegation in the complaint that defendant proposes to make use of its diversion for speculative purposes, is not a statement of fact, but a mere conclusion of the pleader, and that, too, without pleading the facts on which such conclusion is based. It is not to be taken as a proper allegation of fact showing that defendant's object is purely speculative. The complaint should state the facts as to what particular use defendant has made, or proposes to make, of its diversion from the stream, and it is for the court to determine therefrom whether or not the use is a lawful one. It is not the province of the pleader to determine for himself, from facts not disclosed in his pleading, what is and what is not a beneficial use. For aught that appears to the contrary in the complaint, defendant has made a valid appropriation of the waters of this stream. It is therefore not a trespasser, and the doctrine of the case cited that plaintiffs, as riparian owners merely, are entitled to restrain the acts of a mere trespasser, does not apply.

Again, learned counsel says, since there are allegations in the complaint that defendant, without authority from them, entered upon their lands and thereon constructed its ditch, the complaint states a cause for relief on account of such trespass. There

are allegations of that general nature, but it is doubt-
ful if they are sufficient even to make a case for
damages. However that may be, and without decid-
ing the point, we say, without hesitation, that plain-
tiffs did not thereby intend to plead a cause of action
in damages for the unlawful taking of their lands
as a right-of-way for a ditch. The averment, such
as it is, follows allegations in the complaint that
theretofore other persons had built a ditch across
plaintiffs' lands, through which waters of the stream
had been diverted for experimenting in placer min-
ing, which, proving unprofitable, was abandoned.
Then comes the averment now relied upon, which is
to the effect that defendant did appropriate and use
this abandoned ditch, and enlarge the same far be-
yond the original size, but "without any right, au-
thority or permission from these plaintiffs or any
other person or persons having right or power to
give or grant such right, power or authority *for
such use.*" It would seem too clear for argument
that it was the act of defendant in diverting waters
of the stream, and not for the taking of lands for
right-of-way, to which plaintiffs were objecting, and
it is equally evident that plaintiffs intended thereby
to anticipate and negative and destroy any claim
which defendant might assert, that it had connected
itself with an earlier appropriation made before the
plaintiffs' rights accrued, which point they empha-
sized throughout their argument. This construction
which we have put upon this averment is further
made plain by the twelfth paragraph of the com-
plaint, wherein plaintiffs state the injury they have
suffered for which they seek relief. There they spe-
cifically charge that the injury which they have sus-
tained by reason of defendant's acts is the injury to
their lands which is occasioned by the diversion of
the waters of the stream from their natural channel,

because it leaves these lands valueless and of no benefit for the only and natural uses to which they could be applied, and following their allegation, the specific prayer for relief is not against the act of defendant in appropriating a right-of-way, but for diverting waters from the natural stream.

We repeat, and desire to emphasize, that plaintiffs' cause of action, as tried and submitted below, was for defendant's appropriation from a natural stream of waters, which they claim by virtue of their riparian ownership. It would be contrary to established practice, as well as unfair to the trial court, to permit plaintiffs upon appeal thus to shift ground, and here to ask for relief upon a ground which they did not urge and upon which they did not rely below. If defendant has wrongfully taken plaintiffs' lands for a right-of-way, they may obtain appropriate relief therefor in another action, as no such question is here, nor below, was any such matter determined.

This judgment, being in effect that the common-law doctrine of continuous flow of a natural stream is inapplicable to conditions in this state, and that, by necessary construction of our local customs, statutes and constitution, it is abolished, is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.