No. 13,021.

MILLIKEN ET AL. *v.* ZARNOW.
(34 P. [2d] 84)

Decided May 7, 1934.

Mr. JAMES D. PARRIOTT, Mr. ROBERT J. KIRSCHWING, for plaintiffs in error.

Mr. JOEL E. STONE, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

This controversy is between Fred W. Zarnow, a policeman of the City and County of Denver, as plaintiff, against Carl S. Milliken, as manager of safety and excise, William McNichols, as auditor of the City and County of Denver, and George D. Begole, as mayor of the City and County of Denver, as defendants. It arose out of a refusal by Milliken, as such manager, permanently to appoint Zarnow as a police officer of Denver. To secure such permanent appointment, to which he claims he is entitled, Zarnow thereupon filed his petition in mandamus in the Denver district court whereby he sought and obtained an alternative writ of mandamus, which, upon final hearing, was made absolute, requiring and directing Milliken as manager of safety and excise to make Zarnow a permanent patrolman of the Denver city police force. The city authorities, respondents below, plaintiffs in error here, are prosecuting this writ of error to this adverse decree of the district court.

Included in the bill of exceptions and apparently as a part thereof is a so-called stipulation of the parties substantially as follows: It is agreed between counsel that the following facts were admitted: That on, before and after April 16, 1929, Leslie M. Bratton was the manager of safety and excise of the City and County of Denver; that on, before and after June 29, 1931, Carl S. Milliken was the duly and regularly appointed manager of safety and successor to Bratton; that on or about April 16, 1929, Fred W. Zarnow—the defendant in error on this review —possessed all the requisites provided for and necessary, to be eligible as provided by the ordinances of the City and County of Denver, the charter provisions thereof, and the rules and regulations of the civil service commission of the City and County of Denver, to take an examination for and be appointed a patrolman in the classified service; that on said April 16, 1929, the said

Zarnow participated in an examination duly held for the position of patrolman, fourth class, and successfully passed said examination; that thereafter, on January 1, 1931, said Zarnow was duly and regularly appointed a patrolman, fourth class, in the classified service of the City and County of Denver. At this point in the statement of the stipulation the city attorney, representing the plaintiff in error Milliken, stated that it was their contention that Zarnow was merely a probationary appointee and the record elsewhere conclusively shows that to be true. Continuing, the stipulation states that thereafter, and until June 29, 1931, Zarnow, the defendant in error, claims that he performed the duties of patrolman, fourth class; that on June 29, 1931, Milliken as manager of safety and excise, being the successor to Leslie M. Bratton, dismissed Zarnow from the service of the City and County of Denver as a patrolman without a hearing and without himself having filed, or any other person having filed, either with the manager of safety and excise or the civil service commission of Denver, any written charges or specifications against him, without a trial or notice of any hearing and without any findings that Zarnow was incompetent, disqualified or had not been a satisfactory patrolman; that in due course Zarnow petitioned the civil service commission of the City and County of Denver to grant an appeal from the decision and action of said Milliken as manager of safety and excise, which petition was granted by the civil service commission and appeal allowed; that on August 15, 1931, a hearing was had by the civil service commission upon the appeal of Zarnow, at which time the city attorney, representing Milliken, entered a special appearance only, to object to the jurisdiction of the commission to entertain Zarnow's appeal upon the ground that Zarnow was discharged at the expiration of his probationary period by the properly constituted manager of safety and excise, and that such action of the manager is not subject to review by the civil service commission in the matter of pro-

bationary appointments; that thereafter the petitioner Zarnow introduced evidence before the commission tending to show his record for the probation period and the commission found that the evidence tended to show that his rating was such that he was competent and qualified to be certified for permanent appointment; that the civil service commission further found that Milliken, as manager of safety, had failed to show that the conduct and capacity of Zarnow were not satisfactory, but, on the contrary, that the records of the police department, as well as the records of the manager of safety and excise, show that Zarnow's conduct and capacity were satisfactory, and thereupon the commission ordered that Zarnow be reinstated and permanently appointed as a patrolman; that Milliken, as manager of safety and excise, refused to certify Zarnow for permanent appointment and refuses to reinstate him as a patrolman, as provided by the order of the civil service commission, and, as it is said, as required by the provisions of the charter and ordinances of the city.

Notwithstanding the somewhat ambiguous and uncertain language of this so-called agreement, we have thus reproduced it, in substance, for what it is worth, and have done so because of our conclusion as to the merits of the controversy, which is adverse to the conclusion of the civil service commission and Zarnow.

Milliken, as manager of safety, proceeded in this matter and relies for his action in dismissing Zarnow, upon section 234 of article XV of the charter of the City and County of Denver, which reads: ''Every original appointment in the classified service shall be for six months, at the end of which time, if the conduct and capacity of the person appointed have been satisfactory, he shall be permanently appointed; otherwise he shall be out of the service.''

Section 238 of the Denver charter, 1927 edition, the same being section 204 of the original charter of the City and County of Denver, Zarnow contends provides the

method which is applicable to the present controversy for the discharge or removal of an officer of the classified service of the city of Denver. This section 238 reads: "All persons, at the time of the adoption of this charter, occupying positions affected by the provisions of this article, shall retain their positions until discharged, under the provisions hereof. Discharges from the classified service, or reductions in grade or compensation or both, may be made for any cause, not political or religious, which will promote the efficiency of the service; but only on written specification by the authority making the discharge or reduction; and the person sought to be discharged or reduced shall have notice, a copy of the specifications, and be allowed reasonable time for answering the same in writing. A copy of the specifications, notice, answer and the order of discharge or reduction shall be made a part of the record of the division of the service in which the discharge or reduction is made, and a copy shall be filed with the commission. The commission may examine into the facts, and if the person has been wrongfully discharged, may reinstate him."

Supplemental to section 238 of the charter, the civil service commission adopted rule XI, paragraphs 1 to 10 of which relate to the method to pursue in the removal from office of a city employee. In substance section 238 and the rules of the civil service commission passed in pursuance thereof provide that certain persons within the classified service may be removed only after notice and a hearing by the civil service commission. One of these rules provides for notice and a hearing as an essential condition to the validity of a removal. If section 234 is the provision of the charter that is applicable here, and we think it is, the action of the manager of safety in removing Zarnow from the service was valid. If section 238, in connection with the rules of the civil service commission, governs, the removal was improper. The controlling question therefore is: Which section of

the charter affords the remedy for petitioner's grievance?

As already observed, the discussion here has taken a wide range far beyond the necessities of the case. In our view section 234 is the applicable provision of the Denver charter to the case now under consideration. It is conceded that Zarnow at the time of his removal had not received a permanent appointment in the classified service of the city. In other words, his appointment was probational or temporary only. Section 234 expressly provides that every original appointment in the classified service shall be for six months, at the end of which time, if the conduct and capacity of the person appointed shall be satisfactory, he shall be permanently appointed; otherwise he shall be out of the service. One of the paragraphs of rule XI of the civil service commission provides that the person selected for appointment under section 234 shall receive a certificate of appointment for a probational period of six months, and this rule further provides that if any probationer shall upon a fair trial be found incompetent or disqualified for the performance of the duties of the position he is filling, the appointing officer shall certify the same in writing to the commission. There is a further provision in this rule that upon the approval of the commission the probationer should be dropped from the service. When Zarnow was appointed a probationary policeman by Bratton he received from that officer a certificate of appointment for a probationary period of six months. On June 29, 1931, before the expiration of the six months period, petitioner was notified in writing by Milliken, successor of Bratton as manager of safety and excise, that on June 30, 1931, the end of his probationary period as a police patrolman, he, the petitioner, would be dropped from the pay roll of the police department of the city, and at the same time Milliken as such manager so notified the civil service commission as rule VI requires, that the petitioner would be dropped from the pay roll of the police department of

the city. The civil service commission failed to act upon or indicate to the manager of safety that it in any way disapproved of his proposed action.

That Milliken as such manager was the appointing power is not questioned; that he had the right to discharge Zarnow at the end of his probationary term it seems to us is without question, and this discretionary right of the manager is not subject to review by the civil service commission. The power so to act is expressly conferred upon Milliken by a provision of the Denver charter. If, however, it be said that under the rules enacted by the civil service commission its concurrence in such removal was required, we say that the charter of the city of Denver is its organic law. If there is any provision in the rules of the civil service commission inconsistent with or antagonistic to the provision of section 234 of the charter which confers the appointing power upon the manager of safety and excise, the charter provision, and not the rules of the civil service commission, governs. We hold, however, that the rules of the civil service commission invoked by Zarnow are inapplicable. They do not affect a probationary appointee discharged at the expiration of his probationary period under and by virtue of section 234 of the charter. It seems too plain for further discussion that section 234 of the charter of Denver clearly authorized Milliken, as manager of safety and excise, at the expiration of the probationary period, either permanently to appoint Zarnow as a patrolman or to refuse to do so. Milliken did not see fit permanently to appoint Zarnow but, on the contrary, he discharged him, and by the express provision of section 234 Zarnow thereafter was out of the service.

We are not without express authority for this conclusion by previous decisons of this court. In *Shinn v. People,* 59 Colo. 509, 149 Pac. 623, the case there considered involved an interpretation of the Civil Service Act. In an able opinion by Mr. Justice Bailey it was said: ''The scope of the application of this law is to be

gathered from all its provisions which must be considered together to correctly ascertain its meaning. It should be liberally construed to enforce its ostensible object, which is to promote the efficiency of the civil service by employing persons only who have shown, by proper examination, qualifications for positions therein, and not to put in, or keep in the service, persons who have not so qualified.''

█ The failure of Milliken to appoint Zarnow permanently at the expiration of his probationary term of appointment is not the equivalent of a discharge from the classified service. Section 238 of the Municipal Code, claimed to be the section governing this case, is wholly inapplicable to the case before us of a probationary appointee who fails to receive a permanent appointment at the expiration of his probationary period.

Directly in support of our conclusion is the case of *Sowers v. Pitcher,* 63 Colo. 139, 165 Pac. 253, involving the same section as that now before us. It was an action in mandamus to compel payment of salary which the plaintiff in error claimed to be due her after her discharge from a position in the county treasurer's office which was then under civil service. At page 142 of the opinion the court refers with approval to the decision in *Shinn v. People, supra,* and says: ''Plaintiff came within the classified service only when she took and passed the civil service examination, and accepted employment thereunder, as a probationary appointee. Her subsequent discharge, within the six months' probationary period, was, by express charter provision, within the discretion of defendant, and was therefore lawful.''

*Nisbet v. Frincke,* 66 Colo. 1, 179 Pac. 867, was an action in mandamus to restore the defendant in error Frincke to her official position as matron of the city jail of the City and County of Denver, from which position it is alleged she was unlawfully discharged by the commissioner of safety. In the elaborate opinion which was written by Mr. Justice Scott, we find the following

statement on page 3: "If we correctly understand the matter, the city charter, and the rules of the Civil Service Commission, provide that in case of an appointment, of the character here involved, selected from the eligible list, such appointment is and remains probationary for a period of six months from the date of such appointment, and the appointee may be discharged within that time by the appointing power at its pleasure."

That is exactly the case now before us. In the same opinion at page 7 the court clearly points out the difference between the rule that is applicable in a probationary appointment and the rule that governs after the expiration of the period of probation, stating, in effect, that before the end of the probationary period the appointing officer has the unqualified power of dismissal, but after the period of probation expires the appointee is in the classified service and entitled to the protection guaranteed by the charter and rules of the civil service commission. Following our previous decisions and the plain and unambiguous provisions of the charter of the City and County of Denver, we hold that the order of the manager of safety and excise in removing Zarnow from office was clearly authorized by the charter of the City and County of Denver. It is asserted by counsel for plaintiffs in error in their brief, and not denied by opposing counsel, that the method of procedure adopted by Manager of Safety Milliken in discharging Zarnow, is the same as that which the acting manager of safety and excise has followed ever since the Denver city charter was enacted.

The judgment of the district court is reversed and the cause is remanded to the district court with instructions to dismiss the proceedings at the costs of defendant in error.

MR. JUSTICE HOLLAND not participating.

MR. JUSTICE BUTLER and MR. JUSTICE BOUCK dissent.

Mr. Justice Butler, dissenting.

I find it impossible to concur in the reversal of the judgment.

Assuming that it is not necessary to file charges, give notice thereof, and have a hearing thereon, as a condition to dropping a probationer from the pay roll, it does not follow that the appointing officer can act capriciously or arbitrarily. The power conferred upon him is discretionary. The exercise of discretionary power by a public officer is not beyond the control of the courts, although courts will not interfere unless the officer has abused his discretion or acted arbitrarily. *City Council of Denver v. United Negroes Protective Association*, 76 Colo. 86, 230 Pac. 598. The officer is presumed, in the absence of proof to the contrary, to have acted properly, and he who asserts that the officer has not so acted has the burden of proving it.

Let us apply these well-established rules to the present case. Section 234 of article XV of the Denver charter provides: "Every original appointment in the classified service shall be for six months, at the end of which time, if the conduct and capacity of the person appointed has been satisfactory, he shall be permanently appointed; otherwise he shall be out of the service."

In the absence of a showing to the contrary, it would be presumed that the manager of safety and excise found, in the proper exercise of his discretion, that the conduct and capacity of Zarnow had not been satisfactory, and that for that reason Zarnow was not entitled to be permanently appointed. But the parties stipulated that during his probationary period Zarnow performed all of the duties devolving upon him as a patrolman, and "received a rating of seventy-nine and four-tenths per cent (79.4%), said rating being a satisfactory and usual rating and sufficient to establish the conduct and capacity of the said Fred W. Zarnow as satisfactory." That showing overcame the presumption originally existing in favor of regularity, and was sufficient to require the man-

ager to meet it by evidence indicating that he did not abuse his discretion or act arbitrarily, as the stipulation indicated, prima facie, that he did. He introduced no evidence whatever to overcome the prima facie showing made by the stipulation. The trial court, therefore, was justified in finding, as it did, that in dropping Zarnow from the pay roll, the manager abused his discretion and acted arbitrarily.

I respectfully dissent from the decision.

MR. JUSTICE BOUCK, dissenting.

From the majority opinion I respectfully dissent.

In April, 1929, Zarnow, the defendant in error, passed the regular examination given by the Denver civil service commission for the position of patrolman in the police department. His name was duly certified by the commission to Bratton, manager of safety and excise, among those eligible for appointment. He was accordingly appointed as a patrolman on January 1, 1931.

Section 200 in the charter of the City and County of Denver (Denver Municipal Code of 1927, §234) reads as follows: "Every original appointment in the classified service shall be for six months, at the end of which time, if the conduct and capacity of the person appointed have been satisfactory, he shall be permanently appointed; otherwise he shall be out of the service." Under this charter provision Zarnow's appointment was for a probationary period of six months. On the day before that period ended he and the civil service commission were notified by the plaintiff in error Milliken, who had succeeded Bratton as manager of safety and excise, that Zarnow would be dropped from the pay roll at midnight of the next day. Zarnow sued out a writ of mandamus in the district court, commanding Milliken to give the former a permanent appointment.

The vital question before us is whether, under the recognized principles of law governing mandamus proceedings, in this jurisdiction, there are a clear legal right

in Zarnow to receive the permanent appointment and a clear legal duty on Milliken's part to make it. The record before us discloses both beyond the possibility of a doubt.

1. We need not go beyond the stipulation entered into by counsel in the trial court to obtain conclusive proof that the condition contained in the above charter provision has been complied with. It follows, as a mandatory requirement, that Zarnow "shall be permanently appointed." The stipulation expressly admits, as matters of fact, that Zarnow "performed all the duties devolving upon him as a patrolman"; that he "received a rating * * * (79.4%) * * * being a satisfactory and usual rating and sufficient to establish the conduct and capacity of * * * Zarnow as satisfactory"; that Zarnow introduced certain evidence before the commission on August 15, 1931, to show his record for the probationary period; that this evidence showed that his "immediate superior officers had certified" his rating to be 79.4% and that he was "competent, qualified and did possess sufficient conduct and capacity to entitle him to be certified for permanent appointment." The stipulation further admitted that the commission found Milliken had failed to show in any manner that the conduct and capacity of Zarnow were not or had not been satisfactory, and found the records of the police department and those in the office of the manager of safety and excise showed such conduct and capacity to be satisfactory.

It is literally true that Milliken did not at any time introduce evidence to the contrary.

Under a well-known rule, an appellate court is bound by the findings of the court below. This would be true even if the evidence were conflicting. When, as here, every bit of the evidence supports the findings, it would be amazing to override the latter. For this reason I trust that the majority decision will not become final.

This court has held, times without number, that the discretion vested in a public officer must be fairly exercised. If the officer acts capriciously or arbitrarily, there

is an abuse of official discretion. That is the case here. Where such an abuse is shown, this court hitherto has unhesitatingly condemned it and has swiftly undone whatever was based upon it. This, I think, is in itself sufficient to require affirmance of judgment herein.

2. There is another reason why the judgment of the trial court should be affirmed.

The following is a part of the rules duly adopted by the civil service commission: "(7) The person selected for appointment shall be duly notified by the appointing officer, and upon accepting and reporting for duty shall receive from such officer a certificate of appointment for a probationary period of six months. If any probationer shall upon a fair trial be found incompetent or disqualified for the performance of the duties of the position he is filling, the appointing officer shall certify the same in writing to the commission. Upon the approval of the commission such probationer shall be dropped from the service and the probationer shall be notified in writing that at the end of such probationary period he will not receive permanent appointment; otherwise his retention in the service shall be equivalent to his permanent appointment."

In his answer and return to the writ Milliken expressly alleged "that at all times herein mentioned, said charter provision and rule above quoted were in full force and effect."

The validity of the rule thus being admitted by Milliken, our task is simply to give it a reasonable interpretation. Its plain language requires approval by the commission before a probationer can be summarily dropped from the pay roll. Such approval was not given. In fact, on August 15, 1931, the commission expressly disapproved. Inasmuch as the case was tried below on the theory that the rule, as well as the charter provision, was in full force and effect, the parties are bound in the appellate court by this theory. 3 C. J. page 718 et seq., §618; *Cathedral St. John v. County Treas.*, 29 Colo. 143,

148, 68 Pac. 272, 273; *Sternberger v. Seaton Co.*, 45 Colo. 401, 408, 102 Pac. 168, 171; *Mountz v. Apt,* 51 Colo. 491, 497, 119 Pac. 150, 152; *Howard v. Fisher,* 86 Colo. 493, 516, 283 Pac. 1042, 1051.

In spite of these authorities, the majority opinion gratuitously disregards the trial court theory of the parties and undertakes to pass upon the validity of the rule. But it seems unfair to the trial court, as well as to the defendant in error, for this court to substitute a theory of its own, different from that by which the parties themselves are bound.

3. Zarnow also sets up that part of the commission's rules dealing with removal or discharge from the classified service (subdivisions 1 to 10, rule XI), and complains that Milliken did not proceed thereunder. The majority opinion is largely devoted to a discussion of these provisions. They are not involved in this case. It is immaterial whether a probationer is or is not technically in the classified service during his six-month probationary period, and so entitled to specifications and trial. The fact that the parties agree as to the validity of the provision above quoted from rule VI, and the further fact that this should dispose of the case adversely to Milliken, as already shown, make it unnecessary to consider rule XI at all.

4. The cases of *Sowers v. Pitcher,* 63 Colo. 139, 165 Pac. 253, and *Nisbet v. Frincke,* 66 Colo. 1, 179 Pac. 867, cited in the majority opinion, are not in point. The facts in those cases, not fully stated in the opinions, were radically different from the facts here. See, respectively, Supreme Court Library Abstracts and Briefs, vol. 644, Case 8828, abstract folios 10 to 33, inclusive; Id., vol. 703, Case 9208, abstract folios 6 to 25, inclusive. The passage quoted from the latter in the majority opinion here is a mere dictum and inapplicable to the facts of the case at bar.

5. The majority opinion seems to accept as fact a statement of Milliken's counsel in the brief to the effect

that the procedure here followed is in accord with the uniform procedure previously used by the appointing officers in Denver. No one will contend, I am sure, that such an alleged fact, not appearing in the record, can properly be considered for or against a party. More than that, however, counsel was in error. The very cases decided by our court in this field show the contrary to be true.

The foregoing are my reasons for believing that the judgment in this case ought to be affirmed.