No. 15,656.

FELDMAN *v.* CORY ET AL., CONSTITUTING THE CIVIL SERVICE COMMISSION OF THE CITY AND COUNTY OF DENVER.
(169 P. [2d] 317)

Decided April 29, 1946. Rehearing denied May 20, 1946.

114

Messrs. DICKERSON, MORRISSEY & ZARLENGO, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, for defendants in error.

Mr. PHILIP HORNBEIN, amicus curiae.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN action by the deputy chief of the Denver fire department, plaintiff in error, as plaintiff below, to require defendants in error, constituting the Civil Service Commission of the City and County of Denver, defendants below, to certify to the proper appointing authority only plaintiff's name for appointment to the office of chief of the Denver fire department, now vacant; and for other appropriate relief. Judgment below was adverse to plaintiff.

The problem involves rule 8 of the Civil Service Commission rules, adopted in May, 1943, pursuant to which, and contrary to city charter provisions, as plaintiff contends, the commission ruled that certain assistant chiefs, not all, ranking two grades below that of chief, the vacancy position, and one grade below plaintiff's present position, were qualified to compete as candidates to fill such vacancy. Consistent therewith, plaintiff, deputy

chief, and five assistant chiefs, took a civil service examination therefor. We pause to note that the examination was for chief, office vacant, *and* deputy chief, office not vacant, one set of questions and one set of answers covering both positions. In the course of our opinion that feature of the examination will be considered. In making up the grades for the position of chief, each of the participants, the assistant chiefs, no less than the deputy chief, was given fifteen per cent seniority rating. The result was that plaintiff, although receiving a passing grade, as required by charter, placed fourth, three assistant chiefs receiving higher grades. In the situation thus resulting, a further charter provision being observed, the names of those three assistant chiefs, to the exclusion of plaintiff, deputy chief, will be certified, for appointment to the position of chief, one of whom will be appointed. Plaintiff challenges not only the authority of the commission to adopt and enforce rule 8, but also argues that in major particulars, to plaintiff's undoing, the commission erred in its interpretation of the rule. Otherwise stated, plaintiff contends, that as deputy chief, applicable provisions of the city charter considered and subject only to the requirement that he pass a proficiency test, which he did, only he was qualified or eligible for consideration for appointment to the position of chief of the department; also, for that office, as plaintiff emphasizes, only he was entitled to enjoy seniority rating.

It appears that plaintiff has been a member of the fire department of Denver since 1914, and from the lowest rank to that of deputy chief in the department he has enjoyed promotional advancement from grade to grade, always one grade at a time; that since July, 1940, plaintiff has been deputy chief of the department, having been promoted to that position pursuant to promotional competitive examination with other assistant chiefs, the grade next below, and in which he served six years next preceding his promotion to deputy chief; that prior

thereto, and in like manner, he was promoted to assistant chief pursuant to competitive examination with the captains of the department, one grade below. It further appears that in examinations for promotion from captain to assistant chief, and from that position to deputy chief, his grades were higher than those of any other applicant; that since early in 1945, when the late veteran and nationally heralded chief of the department, John F. Healy, became seriously ill, and April 26, 1945, when he departed this life, plaintiff, by virtue of his rank, has served as chief of the department. Likewise, and from the time he became deputy chief, whenever Chief Healy was absent by reason of vacation, illness, or for whatever cause, not infrequently occurring, plaintiff acted as chief of the department, and, when so acting, proceeding pursuant to the letter and spirit of the charter, as well as of sections 17 and 25, 1925 rules and regulations of the Denver fire department, and by unquestioned right, he assumed and performed "all the duties, functions, responsibilities, and authority of the chief of the department." In aid of our discussion we advert to the fact that assistant chiefs have command of districts, and captains command companies within districts. Sections 20 and 34, id. When actively present, only the chief has general administrative authority and city wide jurisdiction, and in his absence or incapacity, for whatever reason or duration, only the deputy chief may exercise such administration and control, and there is no claim to the contrary; nor is there claim that assistant chiefs, those taking the examination, or others, at any time since 1910, when by charter amendment the people created the position of deputy chief, have exercised the authority of the chief or deputy chief, or gained experience or seniority in any position above that of their own. Otherwise expressed, there is no present provision of charter or rule, nor since 1910 has there been, so far as the record discloses, whereby assistant chiefs, or any of them, whatever the contingency, may

exercise other than district jurisdiction. We do not imply that in all circumstances an assistant chief's authority is limited to his own district, for, in certain contingencies, he may command the fire forces in a district other than his own, but, always, at home or abroad, his jurisdiction pertains to a district, and not to the city. "They [assistant chiefs]," says the rule, "shall respond to all alarms of fire where due, and shall assume and retain command at fires in their respective districts, unless relieved by the deputy chief, or chief, of department. When first in at fires in districts other than their own, they shall assume and retain command until the arrival of the assistant chief of such district, or that of the deputy chief, or chief of the department." Section 23, supra. Of a certainty, the charter and civil service and department rules and regulations considered, before the controlling authority of the chief or the deputy chief may be exercised by an assistant chief, or any other, of whatever rank or station in the department, if at all, the incapacity or absence of both chief and deputy chief must supervene, and that, so far as appears, has never occurred. Originally, however, it is pertinent to observe, that section 66 of the city charter (1904) provided that, "The fire department shall be composed of a chief * * * and such other subordinate officers, firemen and other employees to be appointed by the [fire and police] board," etc., and there were assistant chiefs, but no deputy chief. Then, as now, the chief of the department was clothed with wide administrative powers and duties. Municipal Code 1906, page 350, section 893, and charter section 153, pages 60 and 61; Municipal Code 1927, page 585, and 1911 charter section 153a (marginal number 319), page 162. The original section 153 classified city officers and employes, and fixed their several salaries in relation thereto. As already stated, it provided for a chief of the fire department, for assistant chiefs, etc., but not for a deputy chief. In 1910, effective January 1, 1911, the people amended charter section 153, calling

it 153a, and among other changes was a provision creating the position of deputy chief of the fire department, classified as of higher rank than assistant chiefs, but subordinate to the chief of the department, and for a superintendent of fire alarms and an assistant superintendent of fire alarms. In 1923 and 1943, section 153a of the charter, amended in certain particulars, was readopted by the people, but classification as to chief, deputy chief and assistant chiefs, as well as to superintendent and assistant superintendent of fire alarms, remained unchanged from the time of the 1910 amendment. We shall have occasion to refer to the reenactments of section 153a.

Adopting the order in which they appear in the Denver (1927) Municipal Code, we now set forth sections of the Denver Charter said to have relevance:

"224 (Section 189) The commission shall have power to make and enforce rules, which rules shall be printed for distribution, and a copy sent to each officer, board and commission having the right to employ any person in the classified service. No rule shall become effective until ten days after publication in the official newspaper.

"225 (Section 190) The rules shall provide for a classification of all employments in the public service, as specified herein, other than day laborers and unskilled workmen; open and competitive examinations as to fitness; an eligible list from which vacancies shall be filled; a period of probation before employment is made permanent; promotion on basis of merit, experience and record."

"229 (Section 195) No person shall be certified for appointment whose standing shall be less than 65 per cent. of complete proficiency; * * *."

"231 (Section 197) When a position is to be filled in the classified service, the appointing power shall make requisition upon the commission for the name of an eligible person, specifying the nature of the position to

be filled, and upon receipt of such requisition, the commission shall certify the names of three applicants, if there be so many, having the highest percentage, one of whom shall be appointed. In case the requisition shall designate sex, only that sex shall be certified; otherwise sex shall be disregarded. If it be shown that all the persons certified are unsuitable for the position to be filled, the commission shall certify an additional name, but in such case, the reason shall be stated in the certification.

"232 (Section 198) In cases where the commission is unable to comply with the requisition from the eligible list, it may allow a provisional appointment, or it may authorize the appointing power to select a suitable person who shall be subject to examination, and if found qualified, certified for appointment.

"233 (Section 199) The commission shall provide for promotion in the classified service on the basis of ascertained merit and seniority in service and·standing upon examinations, and shall provide, in all cases, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of each department, as desire to submit themselves to examination. The commission shall submit to the appointing power the names of not more than three applicants having the highest rating for each promotion. The method of examining, the rules governing the same, and the method of certifying shall be the same, as near as may be, as provided for applicants for original appointments. Any increase in salary shall be considered a promotion."

"319 (Section 153a) On and after January 1, 1924, the fire department shall consist of the following officers and members, who shall respectively receive the following annual salaries: Chief of fire department, four thousand two hundred dollars; deputy chief, three thousand dollars; assistant chiefs, two thousand seven hundred dollars; superintendent fire alarm, secretary of ·fire department, two thousand five hundred and eighty. dol-

lars; captains, assistant superintendent of fire alarm, and machinists, two thousand one hundred and sixty dollars; lieutenants, engineers, two thousand and forty dollars; assistant engineers, one thousand nine hundred and fifty dollars; carpenters, fire wardens, linemen, operators, firemen of the first grade, one thousand nine hundred and twenty dollars; firemen of the second grade, one thousand eight hundred and sixty dollars; firemen of the third grade, one thousand eight hundred dollars; firemen of the fourth grade, one thousand seven hundred and forty dollars." In the 1943 reenactment the several salaries were increased, but there was no change in classification of chief, deputy chief and assistant chiefs of the fire department.

An analysis of the stated sections of the charter, particularly if made in the light of official and authoritative contemporary construction through four decades, clearly appearing in the record, should reveal the answer to our inquiry. The term "classification" has much, perhaps all, to do with our study. Section 319 (153a) of the charter is the guide in that regard, as all concede. It classifies by rank and salary the members of the fire department, from chief, the highest grade, to firemen of the fourth or lowest grade. Between these two grades there are various and exhaustive classifications, composing the entire fire department. For purposes here, as reference to the section discloses, and as already stated, the chief of the department is first in classification, and immediately following the chief is the deputy chief, that officer, as does the chief, occupying a solo classification. Third in classification are the assistant chiefs, some twelve or more in number. Next come the captains, still more numerous, etc., to the end of the list. From the beginning of civil service in the fire department, more than forty years ago, the Civil Service Commission has had authority to "make and enforce rules," etc. §224 (189). Section 225 (190) reads in part: "The rules shall provide for a classification of all

employments in the public service, as specified herein, other than day laborers and unskilled workmen; open and competitive examinations as to fitness," etc. Section 233 (199) requires that the "commission shall provide for promotion in the classified service on the basis of ascertained merit and seniority in service and standing upon examinations, and shall provide, in all cases, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among. such members of each department [Fire, Police], as desire to submit themselves to examination." The last sentence of section 233, just quoted, in its terms is so broad that if literally observed every fireman of whatever grade, and however recently attached to the service, would be entitled to compete for any vacancy in the department, from any grade above the one in which he was then placed, to chief. In any event, because thought to be unwieldy in its comprehension, or altogether impolitic in its implication, or whatever may have been the prompting, no authority, civil service, appointive, or other, has ever recognized the provision under discussion as apt or workable in the matter of promotions in the department. On the contrary, and from the inception of civil service, the authorities, Civil Service Commission and .all others, invariably and in all instances, until the present one, no doubt moved by the imperative words of section 225 that "classification" shall be "as specified herein" (the 1927 city charter, section 319), and "promotion in the classified service [shall be] on the basis of ascertained merit," etc., section 233, only those in the next lower grade or classification have been permitted to take examination in the matter of filling a vacancy in the next higher grade. In two particular instances—1930 and 1940—where in the grade next below the vacancy there was only a single occupant, he alone was permitted to take the examination, called a promotional examination. And in each instance the examinee, having passed with not "less than 65 per cent. of complete proficiency"

(section 229), was promoted to the higher position. In short, the Civil Service Commission and other authorities functioned on the not unreasonable hypothesis that the charter contemplated promotion from classification to classification (grade to grade), and through that gleaning process, as further must have actuated them, the selection of men best equipped and qualified (frailties of examiners discounted) not only would result, but that ambitious and capable members of the department, successful in promotional examinations through the years, should gain experience in the several classifications of the service, as they made their progress.

The commission, while not questioning the fact that for the great lapse of time appearing, the situation as we have stated has obtained, nor the corollary fact that thereunder, had the commission not changed the rules, in manner presently to be stated, plaintiff, his successful promotional examination considered, would have been entitled to certification for appointment to the position of chief of the department, contends, nevertheless, that, although by charter section 319, already quoted, the position of deputy chief, always solely occupied, and by plaintiff since 1940, was classified by itself, next below that of chief, also always singly occupied, and was immediately above assistant chiefs, numerously occupied, it had authority to classify the position of deputy chief with that of assistant chiefs, and thereby require plaintiff to compete with them in an examination for the position of chief of the department, if and when it became vacant. In evidence of its contention, the commission pleaded its new rule 8, adopted as we have seen, in 1943, three years after plaintiff had become deputy chief, and paragraphs 1, 6, 9 in part, and 14 in part, claimed to be pertinent here, are now stated:

"1. Vacancies in positions in the classified service above the rank of fireman, or patrolman, first grade, shall be filled by promotion from the next lower classification; except that, if under this rule, there are less

than three persons eligible to compete in the examination, then eligibility for participation shall extend to the next lower grade and the seniority credit allowed for the examination shall be the same as it would be, were the examination for the next lower grade."

"6. Seniority shall be based on the number of years' service in the department and in the classification next below the position to be filled by promotion, and shall have a weight not to exceed fifteen per cent (15%) in the examination."

"9. Competition for promotion to positions above the first promotional position above the rank of fireman, or patrolman, first grade, shall be open to those members of the department who have served three (3) full years of active service in the next lower classification, with full seniority after three (3) years of service in the next lower classification, * * *."

"14. The line of promotion in the fire department shall be as follows: A. To chief from deputy chief, or assistant chief. B. To deputy chief from assistant chief. C. To assistant chief from captain, * * *."

Counsel for plaintiff attack paragraphs 1, 9 and 14, of the new rule 8, on the premise, that, considering them severally or in combination, the effect is to work contravention of charter provisions having to do with classifications in the fire department, not to be countenanced, as said; and in relation to paragraph 6, however it may be interpreted and applied to assistant chiefs, as they contend among themselves for the position of deputy chief, in an examination for the position of chief in which they and the deputy chief are participants, only the deputy may enjoy seniority rating. Counsel for the commission maintain that there is but one question, "Is paragraph 1, rule 8 valid?" We are persuaded that other than as to paragraph 6, of the rule, the paragraphs involved together constitute a plan calculated to work a revolutionary change in civil service, the legality of which should be determined by an examination

of all the stressed provisions. In discussing them we shall give attention to the several paragraphs in such order as seems to fit into an understanding presentation of the all-inclusive problem.

In support of the claim that paragraph 1 is legal, counsel for the commission emphasize the language in section 233 of the charter, reading: "All examinations for promotion shall be competitive among such members of each department [Fire, Police], as desire to submit themselves to examination." Historically, as already we have made clear, the quoted provision has not been observed by the commission or any other authority, at any time—never more markedly disregarded than in the present instance. On the contrary, as paragraph 9 indicates, the commission not only did not proceed in the light of that provision, but unprecedentedly limited the examination for deputy chief (combined with examination for chief), to assistant chiefs who had served in that classification not less than a certain number of years, and thereby disqualified some assistant chiefs who, in any event, would have been qualified to take examination for deputy chief. In paragraph 14, no doubt proceeding in consonance with determination to depart from the generations old practice of promotion from classification to classification, the commission crowned its effort by ignoring the charter classification of chief, deuputy chief, assistant chiefs, captains, etc., and classified deputy chief with assistant chiefs. The purpose of paragraph 1, as is clear, was to establish a basis for paragraph 14. In other words, the commission, although for all the years appearing, its conclusion, and that of all other authority as well, had been to the contrary, suddenly determined that when in the classification next below the one in which a vacancy occurs, the charter has not provided that three or more shall be of that classification, then the commission, in order that a greater number might qualify for the examination, may include the next lower classification. Having so pro-

vided, and proceeding with rare inconsistency, it solemnly proceeded by paragraph 9 to undo, to an extent, what it had undertaken to do in paragraph 1, that is to say, disqualified some assistant chiefs concededly of the classification made competent by paragraph 1 to enter the test for chief. Not only were they denied the right which was granted certain of their classification to contend for the position of chief, but because of the combined and identical examination which the commission conducted for both positions, they were excluded from the examination for deputy chief, a right vouchsafed by their charter classification, and recognized and respected by all rules and practice from the beginning of civil service in the fire department. We shall advert further to the identical feature of the examination under consideration.

Since classification of employments is of charter origin, organic and controlling, as may not be questioned, and concerning which that instrument definitely provides that rules of the commission shall provide for "classification" as "specified" therein, we cannot think authority attended the attempt of the commission to classify the position of deputy chief, separately classified in the charter, with assistant chiefs, a group, also separately classified. In the matter of civil service, "the charter of the city of Denver is its organic law." *Milliken v. Zarnow,* 95 Colo. 170, 34 P. (2d) 84. Besides, the two positions are not comparable in creative conception, in dignity, in authority, in salary. Before 1910, as we have seen, there were numerous assistant chiefs, among whom no disparity of rank obtained, precisely as now, and a chief, but no deputy chief. In that year, the people, no doubt conceiving that a position of rank above that of assistant chiefs, but subordinate, nevertheless, to the chief of the department, would be in the interest of experienced, authoritative and unbroken service at the ultimate controls in the administration of the fire department, proceeded by amendment to create the posi-

tion of deputy chief, and classified it below that of chief, with less salary, but above assistant chiefs, with more salary. Was this affirmative action of the people purposeless, a meaningless gesture? Was it their intention to authorize the employment of an additional assistant chief, with increased pay, to conceal which they designated the position by a different name? Of course not. Such idle procedure may not be attributed to the sovereign people. Aside from the fact that the commission was not empowered to change charter classifications in any event, we think the two positions, deputy chief and assistant chiefs, properly may not be regarded as in like category. Contrasting the position of deputy chief in its varying aspects, its conception, its creation, its charter classification, its stand-by attributes, its constant potential authority and duties, frequently exercised by plaintiff, as we have seen, with the limited authority of those in the next lower classification (assistant chiefs), already detailed, reason and logic impel us to conclude that it is an office different and apart. The assistant chiefs, a considerable group, are on a precise level of rank, and none has authority, directly or potentially, to act for, or perform the duties of, the chief. Only the deputy chief may act in that role. While it is true that pursuant to a fire department rule, called to our attention, the deputy chief (the chief being present and functioning generally) is in command of the downtown or principal fire district in the city, still, we do not think it may be said that thereby his charter rank is lowered or impaired. He continues to be deputy chief. By other rules, effective in the absence or incapacity of the chief, the deputy chief becomes vested with, and must exercise, all the authority of the chief. During such periods, frequently occurring, and quite in keeping with the thought which must have moved the people to create the office of deputy chief, the duties of that officer are of the dignity and extent of those of the chief. The department rules further indicate that upon the deputy

chief's appearance at a fire in any district, the chief not having taken charge, the assistant chief in charge defers to the deputy, as does the deputy when the chief arrives. In any event, the over-all administrative duties, essentially of first magnitude, only may be performed by the chief, or, in his absence, by the deputy chief.

Cases in which we have been called upon to construe the authority of the state commission to make classifications, cited in the briefs, we think are beside the point. The state organic law—Constitution—does not undertake to make classifications, as does the city charter, but in relation thereto provides that "Laws shall be made," etc., whereby the creation of a civil service commission shall be authorized, with power to make "rules to carry out the purposes of this amendment and of the laws enacted in pursuance hereof," etc. Const. art. 12, §13. Chapter 36, 1935 Colorado Statutes Annotated, reflects the present legislation enacted pursuant to that constitutional authority. It provides for general classification at the hands of the commission, and in the discharge of that function neither Constitution nor statutory law offers barriers. In addition to the fact that in the matter here, each entity — state and city — is free to establish its own organic law, the different approaches they have made is understandable on another basis. The state civil service setup, barring a few exceptions set forth in the constitutional provision cited above, covers practically the entire civil list of the state's vast employed force, far too large and complex to be set forth in a constitutional provision or legislative enactment, while in Denver, civil service is limited to its fire and police personnel (chief of police excluded), not large in number in either activity, and in each of which the classifications are few.

When we recall that for forty years promotions in the fire department have been from classification to classification, and that plaintiff, starting at the bottom, and omitting beginning classifications, in which he was suc-

cessful, has competed with lieutenants, captains and assistant chiefs, themselves in the several instances the cream of the service, we cannot think he has progressed other than by competition. In all the years of Denver civil service in the fire department, due to the health and strength of the late Chief Healy, and the almost equally extended years of deputy chief Moses, it was not until 1940 that assistant chiefs had opportunity to advance to deputy chief, and as to chief, the first vacancy came in 1945. Upon the passing of deputy chief Moses, an examination for promotion to that office was conducted, and to which only assistant chiefs were admitted. Plaintiff, competing with those who, like himself, had made the hurdles in all the lower classifications, and thus justified their several promotions, excelled in the examination and became deputy chief. Thereafter, as we have seen, the capable and beloved chief passed, and thereby a vacancy was occasioned in the highest classification and next above that of deputy chief, then occupied by plaintiff, and which he had attained through civil service examinations, competitively in every instance, in manner as stated. Theretofore, in 1930 and 1940, as already related, to a vacancy in a classification singly occupied, but not quite so high as here, the single occupant of the classification next below was permitted to take the charter qualification test, and having passed with the required grade, was certified for, and appointed to, the existing vacancy. Plaintiff contends he is entitled to like consideration, and, were it not for the rule of 1943, as all concede, none would say him nay. As already we have indicated, justification did not attend the commission's attempt to classify together the position of deputy chief and assistant chiefs.

Proceeding now to a further study of the history of the creation of the position of deputy chief, and discerning, as we think, what motivated the people as they enacted to that end, we are convinced their intention

was to have a man set apart for training under the chief, against the day when a vacancy would occur in the paramount position. In such connection, we reemphasize that the people acted in the light of the early and continuing practice of all in authority to promote from class to class, as well as in the two instances when in a precise situation the lone occupant in the class next below, having passed the charter test of proficiency, was promoted to the next higher position, singly occupied, and then vacant. These practices, openly and publicly observed by all officials, commission and others, if thought to be inimical to the public, could have been changed or altogether abrogated by the people as they reenacted the charter classification section, the last time in 1943. Considered kindredly, the duties of chief and deputy chief are as one, and only in the discharge thereof does the chief take precedence. Whatever the chief, present and functioning may do, in the chief's absence or indisposition, the deputy is authorized to perform and in doing so may exercise the like personal judgment and discretion that dignifies the chief's determinations. That the similitude of the two positions which we have undertaken to state, is sound, bears the imprimitur of the civil service commission itself, as witness the examination it conducted for chief and deputy chief — precisely the same for both. If the rule classifying deputy chief with assistant chiefs were not inherently unsound, as is evident, the commission's subsequent act of grouping the positions of chief and deputy chief together for examination, well may be regarded as an active voiding thereof. The logic of all the foregoing prompts a further observation: Since the examination for deputy chief is not regarded as differing from what it should be for chief, as the commission has determined, and which we think is well-founded, then, as seems clear, plaintiff, subject only to the charter requirement that he pass a qualifying test, qualified for the position of chief, when, in competition with all other assistant chiefs he pre-

vailed for the position of deputy chief. The sum of what the commission has attempted was to require plaintiff to contend a second time with assistant chiefs. We cannot think that legality attended in the premises, nor, the very purpose of civil service considered, do we think that other than grave injustice was done the one who, climbing from the bottom of the ladder, one rung at a time, always in honorable competition with the other best trained and qualified men in the several classifications, and who at last competently rested his feet on the rung whereon the chief stood, should be shunted back for re-examination in competition with men, all capable, that he had passed on the way. Lest our statement that plaintiff's legally ascertained attainments qualified him to stand beside the chief should be thought to mean that thereby he shared the authority of the chief, we pause to emphasize that we do not so hold. On the contrary, the deputy chief, precisely as are all the personnel of the department, is subordinate to the chief, but, unlike all others, as must have been the conception of the people when they created the position, he serves immediately under the chief, and in that tutelage becomes familiar with the complexities of the administration of the department, the art of directing fire fighting units, and all the other niceties of contact and delicacies of control that must be the accomplishments of the successful director of companies or groups of men engaged in an endeavor that stems from unified deployment of forces. A part of that training consists of actual experience in, and exercise of, all the duties of the chief, in this instance markedly enjoyed. Briefly, the deputy chief of the Denver fire department, attaining thereto on the strength of marks received in all the grades, and serving in that position immediately under the chief, may be likened unto one in the university world who, having been graudated, takes post-graduate or advanced work in a field where there is neither fellow nor competitor. We cannot doubt the people in-

tended that the deputy chief should have such training, and having it, plus passing the charter test of proficiency, should be chosen to succeed the chief as there was occasion.

■ If we were disposed to conclude that the commission is empowered to change charter classifications in the manner here, "not so," as our late distinguished Chief Justice Denison was wont to say, still, we doubt that paragraph 14a of rule 8, which reads, "To chief from deputy chief, or assistant chief," instead of from "deputy chief to chief," as theretofore, effectively classifies the two together. The disjunctive "or" in the sentence of the commission's reliance ordinarily is employed to indicate an alternative, as one or the other, but not both, of persons or things. *Barrow v. Wilcoxson,* 91 Colo. 278, 14 P. (2d) 1095; *Addison v. New England Ass'n,* 144 Mass. 591, 12 N.E. 407. Since the history of the administration of civil service in Denver, as we have seen, clearly indicates that always heretofore the two positions, deputy chief and assistant chiefs, have been classified separately, we cannot think that union thereof may result from language fitly to be employed in an attempt to disunite classifications theretofore united, a situation that as to deputy chief and assistant chiefs never has existed.

■ In the matter of seniority to be accorded in an examination for chief, we cannot think that assistant chiefs, assuming for purposes of the point their competency to participate therein, should enjoy such credit. By virtue of their respective offices, the deputy, not the assistants, is qualified to gain experience and seniority in the realm of the chief's duties, and only the deputy is privileged to, or ever does, exercise the right to discharge such duties. In addition to the foregoing, the commission's own paragraph 6 of rule 8 expressly limits seniority credits to the "classification next below the position to be filled by promotion," a classification in the circumstances here limited to the deputy chief.

Let the judgment be reversed and the cause remanded, to the end that the trial court, proceeding in the light of our opinion, may adjudge anew.

MR. JUSTICE BURKE, MR. JUSTICE JACKSON and MR. JUSTICE BAKKE dissent.